1  **PAMELLA LAWRENCE**
   **Legal Owner and Creditor**
2  **3183 Wilshire Blvd., Ste #196-C43**
3  **Los Angeles, CA 90010**
   defuneral1995@hotmail.com
4  losangelesstory@hotmail.com
5  *IN PROPRIA PERSONA*

FILED

2010 JUL -1  AM 10: 36

CLERK U S DISTRICT COURT
CENTRAL DISTRICT CALIF.
LOS ANGELES
BY

6        **UNITED STATES DISTRICT COURT**
7        **CENTRAL DISTRICT OF CALIFORNIA**

8  PAMELLA LAWRENCE, an          | **HORNABLE COURT JUSTICE**
9  individual,                    | **CASE No.** C\|\|0 - 4737 SVW (Ex)
10        Plaintiff,
11            v.                   | (LA.  Superior  Court  Case:
12                                 | **BC229032**
13  SONY PICTURES                  | **CIVIL COMPLAINT**
14  ENTERTAINMENT INC., a
    Delaware corporation; COLUMBIA | **(1) COPYRIGHT**
15  PICTURES INDUSTRIES, INC., a   |     **INFRINGEMENT – 17**
16  Delaware corporation; TRISTAR  |     **U.S.C. 101. *ET. SEQ.***
    PICTURES, INC., Delaware       | **(2) UNFAIR COMPETITION-15**
17  corporation;  SIDNEY KIMMEL    |     **U.S.C. 1117, 1125(a)**
18  ENTERTAINMENT, LLC., a         | **(3) BREACH OF IMPLIED**
    California limited liability company; |     **CONTRACT**
19  SKE CREATIVE, LLC, a California | **(4) QUANTUM MERUIT**
20  limited liability company;  TARGET | **(5) INTENTIONAL**
    MEDIA ENTERTAINMENT,           |     **INTERFERENCE WITH**
21  GmbH;  SIDNEY KIMMEL, an       |     **PROSPECTIVE**
22  individual;  JIM TAUBER, an    |     **ECONOMIC ADVANTAGE**
    individual; AMY BAER, an       | **(6) NEGLIGENT**
23  individual; BRUCE TOLLER, an   |     **INTEFERENCE WITH**
24  individual; GARETH WIGAM, an   |     **PROSPECTIVE**
    individual; WILLIAM HORBERG,   |     **ECONOMIC ADVANTAGE**
25  an individual; DIANA PHILLIPS, an | **(7) DECEIT AND FRAUD**
26  individual; WONDERFUL FILMS    | **(8) TORTIOUS BREACH OF**
    CORP., a California corporation; |     **CONFIDENCE**
27  LAWRENCE MALKIN, an            | **(9) DECLARATORY RELIEF**
28  individual; DEAN CRAIG, an     |     **RE: TERMINATION, 17**
    individual; GLENN S. GAINOR an |     **U.S.C. 304(c)**





1

individual;  PHILIP ELWAY, an individual; ANDREAS GROSCH, an individual, SHARE STALLINGS, an individual; BRUCE TOLL; an individual; FRANK OZ, an individual; CHRIS ROCK, an individual; CHRIS ROCK ENTERPRISES, INC., a Delaware corporation; BEHAVE PRODUCTIONS, INC.,  a California corporation;  NEIL LABUTE, an individual,  AYESHA CARR, an individual; SCREEN GEMS, INC., a Delaware corporation;  SCREEN GEMS DISTRIBUTION, INC., a Delaware corporation; PARABOLIC PICTURES INC., a California corporation; STABLE WAY ENTERTAINMENT, INC.,  a California corporation; and JOHN DOES I through X, individuals whose identities are not yet known,
       Defendants.

**(10)Declaratory Judgment that [PAu 3-042-567], [PAu 3-118-136],  [PAu V3538 D318 P1-3], and [PA0001671381]are invalid due to a Fraudulent Registration Regarding True Co-authors of US Copyright in Violation of 17 U.S.C. 201, 17 U.S.C. 506 (e) Contracts Relating to Copy Rights Without True Owners shall be Void Against Public Policy**

**[JURY TRIAL IS  DEMANDED]**

## PRELIMINARY STATEMENT

      This is a civil action by Plaintiff Pamella Lawrence, a Jamaican female writer /author seeking declaratory relief, and remedies for violations of the Lanhman Act and the California Unfair Competition laws related to claims arising out of copyright infringement in and to original likeness and work; whereby, Defendants' Tristar Pictures Inc., Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, Sidney Kimmel, Jim Tauber, Gareth Wigam, Amy Baer,  Bruce Toller, William Horberg, Diana Phillips Wonderful Films Corporation, Lawrence Malkin, Dean Craig, Share Stallings, Frank Oz, Chris Rock, Glenn S. Gainor,   William Horberg, Lauren Malkin,  Philip Elway,  Andreas Grosch,  Bruce Toll, Neal LaBute, Chris Rock

Enterprises Inc., Columbia Pictures Industries, Inc., Behave Productions Inc., Ayesha Carr, Screen Gems, Inc., Parabolic Pictures Inc., Stable Way Entertainment and John Does I through X "breach of a settlement agreement" that is hereinafter nullified/terminated pursuant to violations of 17 U.S.C. §101 *et. al*, 17 U.S.C. §106, 17 U.S.C. §201, 17 U.S.C. § 304(c), 18 U.S.C. §371, Felony Copyright Infringement 17 U.S.C. §501, 17 U.S.C. §506 (a)(1)(A), 17 U.S.C. §506(e), 15 U.S.C. §1, 17 U.S.C. §106 Article 1, Section 8, Clause 7 of the U.S. Constitution, 18 U.S.C. 371, 17 U.S.C. §408d, 17 U.S.C. §501, and 28 U.S.C. 2201-2202. Plaintiff asserts Defendants' breached a "settlement agreement" from the Superior Court of Los Angeles, case BC229032; whereby, said parties did not "purchase" her copyrights and are operating without legitimate "ownership" to said copyrights for *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* as the Defendants illegally copied elements on a second occasion and/or transferred and fraudulently absorbed Lawrence's intellectual property copyrights; in order, to deceive the consuming public into believing that the Defendants and Dean Craig a White male created a "Black British Comedy" storyline/concept/plot in the *"Death At A funeral 2007,"* and *"Death At A Funeral 2010"* films. In the L.A. Superior Court case BC229032, Plaintiff Lawrence did not execute a "settlement agreement" for the "purchase" of and/or "transfer," or "assigning" to Sony and the William Morris Agency "ownership" of her book entitled *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994"* for the storyline of a "Naked Women" and/or "Naked Man" at a funeral. Plaintiff Lawrence did not execute a "settlement agreement" giving said Defendants authorization and permission to make derivative film projects from her copyrighted work product or to plagiarize elements from her CD. By Defendants' willful acts of omission, they have operated in consort infringing upon Plaintiff's "inalienable rights" of ownership in violation of the Copyright Act, 17 U.S.C § 101 *et. seg.*, which clearly states that the copyright owner has the *exclusive* right to produce, display or make *derivatives* of a copyrighted audiovisual work. The Plaintiff asserts and alleges Defendant Dean Craig at the behest of Gareth Wigam, Co-Chairman and Amy Baer,

Vice President of Production for Columbia Pictures, Tristar/SPE operated in consort to deceive the U.S. Copyright Office by willfully failing to disclose Pamella Lawrence's name of line six of the copyright registration, thus amounting to "breach of contract," "Fraud" and "Theft". As a proximate result of the "breach of contract," and stealing copyrighted work from Lawrence's CD, the "settlement agreements" are hereby "null" and "void," thus making the *Death At A funeral 2007*," and *Death At A Funeral 2010*" [V3538 D318 P1-3], [PA0001671381], [V3545D307] inoperative/invalid," including but not limited to any and all derivative and/or counterfeiting works. *Buchwald v. Paramount Pictures*, 1990 WL 357611 (Cal. Superior); (*Dezendorf vs. Twentieth Century Fox*, SD.Cal., 1940, 32 F.Supp. 359, Aff'd 9Cir,.118F.2d 561; *Lockheed Information Management Systems Co. v. Maximus, Inc.,* 259 Va. 92 (2000); *Bridgeport Music Inc. v. Bad Boy* 507 F.3d 470 (6th Cir. 2007), The Intellectual Property Protection and Courts Amendments Act of 2004, *Pinkerton v. United States*, 328 U.S. 640 (1946), *Three Boys Music Corp. v. Michael Bolton*, 212 F.3d 477 (9th Cir. 2000); 17 U.S.C. 504(b) (1994). (Exhs. A, B, C, D, E, F, G); (Exhs. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21)

## **STATEMENT OF FACTS COMMON TO ALL CLAIMS**

1.    In 1995, Plaintiff wrote a book entitled **"*Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994,*** about the embarrassment she suffered when a fellow mourner at a July 11, 1994 funeral "publically beat and stripped her naked while the entire episode was being videotaped." (Exh. B, Pamella Lawrence Book); (Exh. C, Video Tape) ; (Exhs F,

2.    Plaintiff filed a copyright application for her book with the United States Copyright Office on May 23, 1995. The Certificate of Copyright issued on October 13, 1995. (Exh. A, Copyright Registration Dated TXu 698-940); ( APL, Affidavit of Pamella Lawrence), (Exh. B, Copyright Registration , P. Lawrence, June 2010)

3.    Plaintiff asserts she submitted her book and a copy of the videotape regarding her real life experience to Agents at the William Morris Agency, 151 El

4

Camino Drive, Beverly Hills, Califonria 90212 for the purpose of submitting her rights for the book to be adapted to a movie and/or for television companies. Thereafter, Lawrenece entered into agreements with Agents at William Morris Agency. In particular, plaintiff alleges she entered into agreements with and submitted her book and videotape to Defendant Aaron Kaplan around or about October 13, 1995, and to Defendant Gary Loder around or about November 14, 1995, and to Defendant David Lubliner on or about December 12, 1996, and to Robert A. Wolken on or about September 10, 1997 at the William Morris Agency. (Exh. "C"); (Exh. "D")

4.      Plaintiff asserts and alleges that she pitched her real life experience on or about October 13, 1995 through September 10, 1997 to Agents at William Morris having provided upon request materials for her (book/videotape, and other research materials).

5.      On information and belief, Plaintiff asserts Matthew Chapman wrote a two page treatment entitled *"The Naked Man"* that had nothing to do with "a funeral" ("emphasis added") and was actually a story line of a comedy about a man who vows to run from Santa Monica to Studio City naked to prove something to his wife and save their rocky marriage. In order to run from Santa Monica to Studio City, one has to run through the wealthiest zip codes/locations/settings ("emphasis added") in America, including Brentwood, Westwood, Bel Air, Beverly Hills, Hollywood into Studio City.

6.      On information and belief, after October 13, 1995, said Agents at William Morris Agency forwarded a copy of Plaintiff Lawrence's book entitled *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994,* and the video tape to Defendants A. Baer, G. Wigam, Co-vice Chairman of Columbia, Tristar, and Sony Pictures.

7.      On information and belief, Plaintiff asserts Matthew Chapman sale of his pitch for *"The Naked Man"* was on November 13, 1997, when the sale was reported in articles on the front page of Daily Variety and on page 3 for $1 million for The Hollywood Reporter, and had nothing to do with a "Naked Man at a Funeral." ("emphasis added") (Through January 1998 in an addition of The Hollywood Literary

Sales Directory reported, "Screenplay, Book, Treatment and Pitch Sales") (Exh. H, Hollywood Literary Sales Directory)

### Gareth Wigam and Amy Baer Request A Private Pitch Meeting for *Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994*

8.     Around or about March 13, 1998, Defendants G. Wigam, Co-vice Chairman of Columbia Tristar that was born in Britain ("emphasis added"), and Sony Pictures Entertainment with premeditation to steal contacted Plaintiff Lawrence and requested that she attend a "pitch meeting" at 3:00 p.m. located at 10202 Washington Blvd Culver City, CA 90232-3119 with himself and A. Baer, Vice President of Production for Columbia Tristar Pictures for *"Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994"*.

### The Pitch Meeting at Sony Pictures Entertainment

9.     On March 19, 1998, A. Baer and G. Wigam, Co-vice Chairman of Columbia Tristar, and SPE hosted a "pitch meeting" with P. Lawrence for the purpose to sell the story/book/videotape for *"Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994.*     The meeting lasted for about an hour located at 10202 Washington Blvd Culver City, CA 90232-3195.

10.     At the conclusion of the "pitch meeting" A. Baer, and G. Wigam requested that the Plaintiff leave within their possession a copy of her book/videotape/ and other research materials, thus constituting "access".

11.     On or about March 26, 1998, Plaintiff received a letter dated March 24, 1998 from Defendant A. Baer, Vice President of Production of Columbia Tri Star Pictures proclaiming *"Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994* :

"unfortunately it is not something that Tristar wishes to pursue at this time." (Exh. , A. Baer, Letter Dated March 24, 1998)

12.     On information and belief G. Wigam, Co-Chair, and A. Baer, Vice President of Production of Columbia Tristar Pictures gave "access" to Defendants' Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment,

GmbH, Sidney Kimmel, Jim Tauber,  Bruce Toller, William Horberg, Diana Phillips Wonderful Films Corporation, Lawrence Malkin, Dean Craig, Share Stallings, Frank Oz, Chris Rock, Neal LaBute, Chris Rock Enterprises Inc., Columbia Pictures Industries, Inc., Ayesha Carr, Screen Gems, Inc., Parabolic Pictures Inc., Stable Way Entertainment and John Does  I through X for the purpose and bad faith intent to steal Plaintiff's Lawrence's copyrighted work entitled *"Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994 "*, her video and other research materials.

13.    On information and belief, all of the above Defendants' at the behest of G. Wigam, Co-Chair, and A. Baer, Vice President and of Columbia Tristar Pictures/SPE studied the non-copyrighted video tape and immediately sent a camera crew directly into the Black communities on Crenshaw where the funeral hall was located to gather "competitive footage" on all of the surrounding businesses and vehicles within a 12 mile radius of the funeral home.

14.    Ninety Nine Percent of the time a person that commits a crime returns to the scene of the crime and gets caught.

15.    On information and belief, said Defendants' stole from the pitch and copied Plaintiff copyrighted work *"Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994 "* and the non-copyrighted video tape entitled *"Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1."* The Plaintiff asserts said Defendants A. Baer, and G. Wigam acts of fraud reflected malice forethought and   insidious discrimination by the "theft" of her pitch/book/video tape which encompassed the storeline, plot, including the opening scenes for the surrounding locations of *"Death At A Funeral 2010"* that are disguised in a fake cartoon format; in order not be identified as work stolen from Pamella Lawrence's work and her actual video-tape.

16.    On or about April 1998, Plaintiff contacted Defendants' G. Wigam, and A. Baer of Columbia Tristar Pictures, including the William Morris Agency to notify them that *"The Naked Man"* had an element concept of her life story of a "naked woman" walking down the street and that the treatment was sold for $1 million dollars to Tristar.

17.    The Plaintiff asserts and alleges said Defendant A. Baer, Vice President of Tristar Pictures with "malice forethought" told the Plaintiff Lawrence **"get lost, if you can afford to prove our action see you in court, we employee the best attorneys."** The Plaintiff asserts G. Wigam, Co-Chair and A. Baer, VP of Production for Columbia Pictures, Tristar Pictures/SPE stole Plaintiff Lawrence's work; where thereafter the Defendants' conspired to use corporate financial resources to seek out an attorneys assistance to carry out the commission of theft, fraud and deceit, and copyright infringement in violation of ABA MODEL CODE OF PROFESSIONAL RESPONSIBILITY, DR 2-103 (E),  DR 3-101 , DR 5-101,  CANON 2, and CANON 3.

18.    It is clear from these consorted bad faith actions by Defendants A. Baer, and G. Wigam of Columbia Tristar Pictures, why so few minorities over more than 15 years have not been able to find longevity in careers at Sony Pictures Entertainment, as well as, attain higher ranking position as Executives.

19.    The Plaintiff asserts and alleges all of the above named Defendants financed, produced, developed and distributed the movies *"Death at A funeral 2007,"* and *"Death At A funeral* 2010" which are based on the Plaintiff's copyrighted work entitled *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994* ", and her actual video tape.

20.    The Plaintiff asserts and alleges that she brought forth a lawsuit in the Superior Court of Los Angeles, Case No. **BC229032** against A. Baer, and G. Wigam of Columbia, Tristar Pictures, including the William Morris.

21.    Between March 13, 2001 and June 1, 2001, the Plaintiff asserts that she settled the lawsuit against A. Baer, and G. Wigam of Columbia Tristar Pictures, including the William Morris for an undisclosed amount. (Exhs. SWM, Settlement Agreement William Morris); (Exh. SS, Settl. Agreement SPE, A. Baer, G. Wigam); (Exh. CWM, William Morris Settl. Chck); (Exh. SBD1, SPE Settl. Breakdown); (Exh. SC, SPE Check dated 3/22/01); (Exh. SC2, SPE Check);(Exh. CWM1),(Exh. CS1)

22.    In breach of the settlement agreement, the Plaintiff asserts and alleges in bad faith said Defendants bragged ("emphasis added") about stealing Plaintiff's work

with the tacit approval of G. Wigam and A. Baer throughout the film *"Death At a funeral 2010"* making above the brow jokes referencing the "settlement agreement" between Plaintiff Lawrence; whereby Martin Lawrence's character professed: "Everybody knows that the Colonel Harland Sanders stole that "recipe" ("Emphasis Added") from a Black slave named Jubilee… I give him credit for the coleslaw."

23.    In breach of the settlement agreement, in another bad faith act where a skit was written into the *"Death At a funeral 2010"* film the Defendants made a second above the brow joke insulting Plaintiff Pamella Lawrence causing the "physical injury" of "emotional distress" and "anxiety" by referencing the "settlement agreement" without feeling, regret, reflection or remorse; whereby the characters Chris Rock/ "You know I'm a writer too. " states: "We all "write checks." ("emphasis added") However, your brother is an "Author".

24.    The Plaintiff asserts and alleges that she did not execute a settlement agreement giving "ownership" of her copyright work ***Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994*** " to said Defendants A. Baer, and G. Wigam of Columbia Tristar Pictures.

25.    The Plaintiff asserts and alleges that she did not execute a "settlement agreement" giving all of the above named Defendants' authorization and permission to make "derivative" film projects from her copyrighted work product ***"Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994*** " nor did she authorize them to plagiarize her protective elements from her videotape entitled ***"Caught On Video… The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1."***

26.    In breach of the settlement agreement, Defendants' Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, Sidney Kimmel, Jim Tauber, Bruce Toller, William Horberg, Diana Phillips Wonderful Films Corporation, Lawrence Malkin, Dean Craig, Share Stallings, Frank Oz, Chris Rock, Neal LaBute, Chris Rock Enterprises Inc., Columbia Pictures Industries, Inc., Tristar Pictures, Sony Pictures Entertainment, Ayesha Carr, Screen Gems, Inc., Parabolic Pictures Inc.,

Stable Way Entertainment and John Does  I through X. gave "**false oaths of ownership**" to the Register of Copyright office regarding authorship in violation of 17 U.S.C. §201 and 17 U.S.C. §506 (e) by failing to disclose Pamella Lawrence's name on line six of the copyright registrations for "*Death At A Funeral 2007*," and "*Death At A Funeral 2010*".

27.     The Plaintiff asserts and alleges all of the above financed, produced, and/or were unjustly enriched by Defendants distributing *Death At A Funeral 2007* on a budget of $9 million grossed revenue $46,600,669 (worldwide), and was released on 17 August 2007 (US), 2 November 2007 (UK), Germany 10 February 2007 (European Film Market),  Finland 24 August 2007, Norway 24 August 2007, Italy 29 August 2007 (limited), Denmark 7 September 2007, France 19 September 2007, Portugal  20 September 2007, Italy 21 September 2007, Sweden 21 September 2007, Singapore 27 September     2007,      Brazil      5      October     2007,      Australia11October 2007.(http://en.wikipedia.org/wiki/Death_at_a_Funeral_(2007_film); (http://www.imdb.com/title/tt0795368/releaseinfo)

28.     The Plaintiff asserts and alleges all of the above financed, produced and/or were unjustly enriched by said Defendants distributing *Death At A Funeral 2010* on a budget of budget   21 million gross revenue $41,945,596 (worldwide), and was released on 16 April 2010 (USA),  Canada      16 April 2010, USA 16 April 2010, Iceland 4 June 2010, UK 4 June 2010, Greece 7 June 2010, Spain 25 June 2010,  Italy 14 July 2010, Netherlands 15 July 2010,  Poland 23 July 2010, Sweden 23 July 2010,  Belgium 4 August 2010, Argentina 19 August 2010, Brazil 20August 2010, Finland 27 August 2010.(http://en.wikipedia.org/wiki/Death_at_a_Funeral_(2010_film); (http://www.imdb.com/title/tt1321509/releaseinfo)

29.     In breach of the settlement agreement, the Plaintiff asserts and alleges that Defendants G. Wigam, Co-Chairman and A. Bear, Vice President of Tristar Pictures, Screen Gems, Sony Pictures Entertainment and John Does I through X went to the extreme conspiring with corporate financial resources to implement an elaborate "public relations campaign" by setting the "*Death At A Funeral, July 11 2007*" film all the way in England referring to the film as a "British Black" comedy, written by a White male

("emphasis added") Dean Craig for the sole purpose to give "false oaths of ownership" to the U.S. Copyright office in violation of 17 U.S.C. §201 amounting to a theft and fraud, and to disguise the true origins/author and deny screen credit to a female Plaintiff Pamella Lawrence for "*Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994* ," as well as, block Lawrence from a 5 picture "distribution deal," and/or movie contracting with Sony, and/or deny her "Executive Producer" status within corporate ranks.

30.    Thereafter, Defendants' G. Wigam, Co-Chairman and A. Bear, Vice President of Tristar Pictures, Screen Gems, Sony Pictures Entertainment, Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, Sidney Kimmel, Jim Tauber, Amy Baer,  Bruce Toller, Gareth Wigam, William Horberg, Diana Phillips Wonderful Films Corporation, Lawrence Malkin, Dean Craig, Share Stallings, Frank Oz, Chris Rock, Neal LaBute, Chris Rock Enterprises Inc., Columbia Pictures, Ayesha Carr, Screen Gems, Inc., Parabolic Pictures Inc., Stable Way Entertainment and John Does I through X conspired to attribute "*Death At A Funeral 2010*" as a "remake" of "*Death At A Funeral 2007*," in order, to conceal the origins of the legal author/owner and deny screen credit to Plaintiff Lawrence, as well as, transfer and fraudulently absorbed Lawrence's intellectual property assets in order to deceive the consuming public into believing that male Defendants created the storyline/concept/plot in the "*Death At A funeral 2007*," and "*Death At A Funeral 2010*" films.

31.    The Plaintiff asserts Defendants G. Wigam, Co-Chairman and A. Bear, Vice President of Tristar Pictures, Colombia, Screen Gems, and Sony Pictures Entertainment violated 17 U.S.C. § 2, 17 U.S.C. § 3, 17 U.S.C. § 4, 17 U.S.C. § 101, and 17 U.S.C. § 201 failing to disclose to the United States copyright office the true authorship of Plaintiff Pamella Lawrence for "*Death At A funeral 2007*," and "*Death At A Funeral 2010*" films constitutes breach of a settlement agreement, theft, fraud and deceit.

## JURISDICTION

32.  This complaint alleges copyright infringement arising under U.S. Copyright Act (hereafter, the "Copyright Act") of 1909, and 1976, 17 U.S.C. § 101 *et. al.*, and 28 U.S.C. §§1331, 1338(a)(b), and 1332.

33.  The Court has subject matter jurisdiction for claims of unfair competition arising under the Lanham Act, 15 U.S.C. §1125(a), and for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 *et. seq.*, Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 2201, and 2202 ("a case or controversy within its jurisdiction"). This Court has jurisdiction over these state law claims pursuant to its supplemental jurisdiction, 28 U.S. C. §1367(a).

## VENUE

34.  Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§1391(b) and (c), 1400(a).

## PARTIES

35.  Plaintiff Pamella Lawrence is a citizen and resident of Los Angeles, California

36.  At all times relevant, Defendant Sidney Kimmel, (hereinafter "Kimmel") was and is a resident of the state of California, conducting business in the state of California, serving as the current CEO for Defendant Sidney Kimmel Entertainment, LLC.

37.  At all times relevant, Defendant Sidney Kimmel Entertainment, LLC, is a California Corporation conducting business and having its principal office and headquarters in the city of Beverly Hills in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

38.  At all times relevant, Defendant SKE Creative, LLC., is a California Corporation conducting business and having its principal office and headquarters in the city of Beverly Hills in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

39.     At all times relevant, Defendant Target Media Entertainment, GmbH, is a California Corporation conducting business and having its principal office and headquarters in the city of Beverly Hills in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

40.     At all times relevant, Defendant Amy Baer (hereinafter "Baer") was and is a resident employed by Tristar Picturs Inc. which is a division of Sony Pictures Entertainment conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

41.     At all times relevant, Defendant Gareth Wigam (hereinafter "Wigam") was a resident employed by Tristar Pictures Inc. which is a division of Sony Pictures Entertainment conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

42.     At all times relevant, Defendant Sony Pictures Entertainment, Inc. (hereinafter "SPE") is a Delaware Corporation conducting business and having its principal office and headquarters in the city of Culver City in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

43.     At all times relevant, Defendant Tristar Pictures Inc, Inc. (hereinafter "Tristar") is a Delaware Corporation conducting business and having its principal office and headquarters in the city of Culver City in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

44.     At all times relevant, Defendant Wonderful Films Corp. is a California Corporation conducting business and having its principal office and headquarters in the city of Santa Monica in the state of California, and has "distributed" and "counterfeited"

more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

45.    At all times relevant, Defendant Stable Way Entertainment, Inc.. is a California Corporation conducting business and having its principal office and headquarters in the city of Santa Monica in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

46.    At all times relevant, Defendant Screen Gems, Inc. is a Delaware Corporation conducting business and having its principal office and headquarters in the city of Culver City in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

47.    At all times relevant, Defendant Screen Gems Distribution, Inc. is a Delaware Corporation conducting business and having its principal office and headquarters in the city of Culver City in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

48.    At all times relevant, Defendant Columbia Pictures Industries, Inc. (hereinafter "Columbia") is a Delaware Corporation conducting business and having its principal office and headquarters in the city of Culver City in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

49.    At all times relevant, Defendant Behave Production, Inc. is a California Corporation conducting business and having its principal office and headquarters in the city of Culver City in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

50.    At all times relevant, Defendant Neal LaBute (hereinafter "LaBute") was and is a resident conducting business in the state of California, and has "distributed" and

"counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

51.    At all times relevant, Defendant Frank Oz (hereinafter "Oz") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

52.    At all times relevant, Defendant Dean Craig (hereinafter "Craig") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

53.    At all times relevant, Defendant Glenn S. Gainor (hereinafter "Gainor") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

54.    At all times relevant, Defendant William Horberg (hereinafter "Horberg") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

55.    At all times relevant, Defendant Laurence Malkin, (hereinafter "Malkin") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

56.    At all times relevant, Defendant Diana Phillips (hereinafter "Phillips") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

57.    At all times relevant, Defendant Bruce Toller (hereinafter "Toller") was and is a resident conducting business in the state of California, and has "distributed" and

"counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

58.    At all times relevant, Defendant Jim Tauber (hereinafter "Tauber") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

59.    At all times relevant, Defendant Philip Elway (hereinafter "Elway") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

60.    At all times relevant, Defendant Andreas Grosch (hereinafter "Grosch") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

61.    At all times relevant, Defendant Bruce Toll (hereinafter "Toll") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

62.    At all times relevant, Defendant Ayesha Carr (hereinafter "Carr") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

63.    At all times relevant, Defendant Share Stallings (hereinafter "Stallings") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

64.    At all times relevant, Defendant Lawrence Malkin (hereinafter "Malkin") was and is a resident conducting business in the state of California, and has "distributed"

and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

65.     At all times relevant, Defendant William Horberg (hereinafter "Horberg") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

66.     At all times relevant, Defendant Chris Rock (hereinafter "Rock") was and is a resident conducting business in the state of California, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

67.     At all times relevant, Defendant Chris Rock Enterprises Inc., is a Delaware Corporation conducting business and having its principal office and headquarters in the city of  in the state of New York, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

68.     At all times relevant, Defendant Parabolic Pictures Inc.., is a California Corporation conducting business and having its principal office and headquarters in the city of  in the state of Newport Beach, and has "distributed" and "counterfeited" more than 10 copies of Plaintiff's federally protected copyright across the state lines of California.

69.     Defendant John Does I through X are employed at all of the above Defendants companies existing and doing business under the laws of the State of California, and located at and engaging in business in said state, including having distributed more than 10 copies of stolen copy written material in the state of California.

70.     Plaintiff Lawrence has exhausted all of her administrative remedies with the copyright office. Pursuant to 37 C.F.R. 201.7(a), Id. 781-82, and there are no "external remedies" for external third parties. Plaintiff asserts there are no "inferences" or "utterances" within the William Morris settlement agreement nor the Sony agreement that infers the Plaintiff to have sold her underlining copyrights.

### SIMILARITIES BETWEEN PAMELLA'S VIDEO AND THE MOVIE

71.   The incidents, characters, and settings in *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* are unique, and therefore protected. Pamella's characters, setting, plot, sound and visual effects, scenes, and the total concept and feel are embodied in the film *Death At A Funeral 2010*. Defendants have not only copied verbatim Plaintiff's ideas in her video, they have copied Plaintiff's expression of her ideas, and failed to disclose her name on line six of the copyright registration constituting breach of "settlement agreement" and "theft." The total concept without permission and feel on the two works is substantially similar.

72.   The substantial similarities by and between *"Death At the Funeral 2007"* and *Death At A funeral 2010"* and *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* concern many of the protectable elements, including, but not limited to: actionable similarity in plot, expression, theme, characters, dialogue, mood and setting. The use of a title along this same continuum is just one similarity. In addition, the "pattern of theft" is "black and white" between the correlation and usage of the opposite spectrum of "visual images:" (*Regina Kimbell, vs. Chris Rock Enterprises,* Case U.S. Dist. Crt. California, CV09-07249 (DFS)) *"My Nappy Roots" vs. "Good Hair"*)   A brief outline of the comparisons is attached to this complaint and incorporated herein as Exhibit 1, as well as, listed below:

| *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1".* | *"Death At A Funeral 2010"* |
|---|---|
| A) CHARACTER – African American, Reverend - Same physique, 13:00-13:15 seconds; 17:56-18:34 seconds | CHARACTER - African American, Keith David...Reverend Davis- Same physique 16:20-17:03 seconds |
| B)  Lady in Black Outfit, holding "white handkerchief" -16:09-16:12 seconds and 52:54-53:05, height same, weight same, played two rolls- a the wife of the deceased- 15:15 -15:30 seconds, and | Loretta Devine... Cynthia- Attacker, Black Outfit, holding "white handkerchief" - 7:26 – 8:20 seconds, played two rolls as the wife of the deceased; CHAOS – In front of coffin 1:20 -1:21:21 seconds; Attacker |

| | |
|---|---|
| Pamella's attacker… CHAOS – In front of coffin 43:34-; Pulled off Pamella's "weave" - 49:42 | pulls off guest hat with "weave" ("Emphasis Added") |
| C)   Young Black male, Lover lingering at dead man's coffin white shirt black stripes 37:56-38:32 seconds, touching coffin; fight at funeral over "romantic relationship" plot; Guest is a "**Black Sailor suit**" ("**emphasis added**") "**white stripes**" ("**emphasis added**") in the front row for the gay theme - 20:04-20:20 seconds, gay theme striped prison ("emphasis added") shirt – 37:32-38:33 seconds; gay theme…man totally breaks down crying 39:19-39:26; gay theme- Sailor in black outfit white stripes kisses deceased twice after wife ("emphasis added") 14:10 – 44:31 | Peter Dinklage…Frank, White young male, homosexual lover; Lover lingering at dead man's coffin 15:58-16:02 seconds; touching coffin; Gay Parade "**White Sailor suit**" ("emphasis added") "**black stripes**" ("**emphasis added**") - 38:33-38:37 seconds; fight at the funeral 50:00-51:38 seconds, 1:20:52 - Lover being carried away from dead body, 1:21:12 -1:21:30 - handkerchief wife of deceased attacks gay lover; pictures drop on the ground; gay theme- Sailor kisses deceased twice after wife ("emphasis added") 14:10 – 44:31 |
| D)   Pamella – "I went to go see a doctor after the attack," pg. 101 | Ron Glass…Duncan – Doctor |
| E)   Pamella "**Lawrence**" – Writer from New York travelling to Los Angeles; "like a novel or play, the "idea" ("emphasis added") to taking this problem to a "talk show," ("emphasis added" unfolded in my head," pg. 120 | Martin "**Lawrence**"…Ryan – Writer from LA travelling to New York; black and white shirt image, "If I don't get some money soon, I'm gonna have to do a damn "reality show," 46:35-46:37, |
| F)   Beverly –                       White female related to deceased by marriage, sharply dressed- pg. 80; accompanying Pamella Lawrence to the funeral-31:05-31:08 seconds;   …   "Pamella" – fight inside funeral that leads outside, "I was **pulled away by some friends**," pg. 92, 33:03-33.27 seconds; | James Marsden…Oscar – White male accompanies Zoë Saldaña to the funeral; Oscar / Cynthia – Face in Chest – Oscar sang – Song "Amazing Grace -" 23:52 – 24:17 seconds; fight inside funeral that leads outside 30:06-32:04 seconds, "**pulled away by some friends**," pg 92;   naked person at funeral 51:59-52:17, 1:06-1:07:59;   1:13:20   –   1:14-15:42   - Combination of Naked Man Plot |

| | |
|---|---|
| G) Pamella – "Received medication for the pain and to help fight any "infection" ("emphasis added"), pg. 101; | Tracy Morgan… Norman - "Received medication for the pain and to help fight any "infection" ("emphasis added"), 34:55-35:04 - Infection; 1:01:10-1:41 |
| H) 15:09 -15:13 seconds – Two Brothers one in Black and one in White standing against the left wall – 15:53 -15:59 seconds; 16:54-17:09 seconds- Zoom in Plot of two brothers … | Chris Rock…. Aaron, black and white shirt image – 1:23:43-1:24:53 seconds, Aaon Barnes – Standing with Ryan side by side, looking at the guests arrive and walk to casket, |
| I) Pamella "Lawrence" – Likenes - Blk. Slim, Sleeveless dress, with necklace, accompanying White female; fight at funeral over "romantic relationship" plot | Zoe Saldana…Elaine (as Zoë Saldaña), Likeness - Blk. Slim, Sleeveless dress, with necklace, accompanying White male; fight at funeral over "romantic relationship" plot 1:07-1:07:14 |
| J) Debby- fight at funeral over "romantic relationship plot" 1:07-1:07:14 | Luke Wilson… Derek- fight at funeral over "romantic relationship plot" 1:07-1:07:14 |
| K) Chinese guy holds Pamella's hand during the fight. His name is Mr. Chung. | Jamison Yang…Asian Man |
| L) Pamella and her White friend seating arrangements on the video- 31:05-31:08 seconds; | Oscar and Elaine in the funeral seated identical as (Pamella and her White friend) |
| M) MUSIC – "Service "started" ("emphasis added") with a mellow tune by Jamaican Music, "Jamaican reggae artist Yellow Man," pg. 81 book; "Amazing Grace – 14:46-16:12;" | MUSIC – "Service "started" ("emphasis added") with a mellow tune by Jamaican Music, "Jamaican reggae artist Yellow Man," pg. 81 book; "Amazing Grace;" |
| N) EMOTIONS, Pamella Constant battle with nervousness- pg. 79 book, "very emotional funeral"- pg. 81; "chaos continued as the crowed was hastily ushered out of the building," pgs. 82-83, | EMOTIONS, Constant battle with nervousness- pg. 79 book, "very emotional funeral"- pg. 81; "chaos continued as the crowed was hastily ushered out of the building," pgs. 82-83, |

| | |
|---|---|
| O)    SETTING – Copied businesses within a 12 mile radius of the funeral home., Credits of the film reflect setting in Los Angeles, license plate reflects California Deceased, tennis shoes hanging on inner city electric wire to the telephone line 1:37- 1:39; Burger Restaurant 1:44-1:49; Carwash 2:04-2:08; Pasadena Bridge 2:13-2:14;   Mailman truck directly across the street from funeral home – 5:47; | SETTING – Copied businesses within a 12 mile radius of the funeral home., Credits of the film reflect setting in Los Angeles, license plate reflects California Deceased, tennis shoes hanging on inner city electric wire to the telephone line 1:37- 1:39; Burger Restaurant 1:44-1:49; Carwash 2:04-2:08; Pasadena Bridge 2:13-2:14; Mailman truck directly across the street from funeral home – 5:47; |
| P)    LOCATION – Crenshaw Blvd., pg. 77 book, | LOCATION – Crenshaw Blvd., pg. 77 book, |
| Caught On Video…The Most Embarrassing Moment de Funeral, "**July 11, 1994" date** is an admission of "Theft". | The "**July 11, 2007**" release date for "Death At A Funeral 2007" is an admission of theft of Lawrence's work. |
| Q)    Deceased Successful Entrepreneur Respected Promoter/Producer of Reggae Music Industry and Husband and Father | Deceased Successful Entrepreneur Respected Promoter/Producer of Reggae Music Industry and Husband and Father |

# FIRST CAUSE OF ACTION

## (COPYRIGHT INFRINGEMENT – 17 U.S.C. §101 et. seq.)

### (By Pamella Lawrence against All Defendants)

73.    Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

74.    Plaintiff  *"Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* contains material that is original and created by Lawrence, and is copyrightable subject matter under the laws of the United States.

75.    On or about, June 2010, Lawrence secured the exclusive rights and privileges in and to *"Caught On Video…The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* which is a supplemental video to *"Caught On*

21

*Video...The Most Embarrassing Moment de Funeral, July 11, 1994"* by registering the copyrights and receiving from the Register of Copyrights a confirmation on August 21, 1995 for the registration bearing the Claim ID No, [TXu000698940] and [ ]. Plaintiff owns a valid and enforceable copyright which are creative works of original authorship.

76.    Lawrence is currently and always has been the sole proprietor of all rights, title and interest in and to the copyright in *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"*.  As the sole proprietor of all rights, title, and interest in and to the copyright in *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* Lawrence has the exclusive right to, among other things, to copy and prepare *derivative* works based on *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* or transfer these rights to someone else.

77.    Lawrence has complied in all respects with the copyright laws and is the exclusive owner of the copyrights to the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* including the rights infringed by Defendants. Lawrence has obtained from the Register of Copyright Certificates of Registration. These certificates are identified, dated and numbered as follows:

| NAME | TITLE | COPYRIGHT NUMBER | DATE |
|------|-------|------------------|------|
| Lawrence, Pamella | Caught on video, the most embarrassing moment. | TXu000698940 | 1995 |
| Lawrence, Pamella | *Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1* | | 2010 |

78.    Through the acts alleged above, Defendants Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, Sidney Kimmel, Jim Tauber, Amy Baer,  Bruce Toller, Gareth Wigam, William Horberg, Diana Phillips Wonderful Films Corporation, Lawrence Malkin, Dean Craig, Share Stallings, Frank Oz, Chris Rock, Neal LaBute, Chris Rock Enterprises Inc., Columbia Pictures Industries, Inc.,

Ayesha Carr, Screen Gems, Inc., Parabolic Pictures Inc., Stable Way Entertainment and John Does I through X have violated Lawrence's exclusive right to reproduce and make copies of its copyrighted support materials by copying her copyrighted treatment and book onto its computers in violation of 17 U.S.C. § 106.

79.     Defendants were not authorized to copy, download, reproduce, create derivative works from, distribute, or publicly display Lawrence's copyrighted treatment and book entitled the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1."*

80.     In addition to directly infringing Lawrence's copyrights, Defendants have contributorily and/or vicariously infringed her copyrights for the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* by controlling, directing, inducing or materially contributing to the copying, distribution, publicly display or creation of derivative works from Lawrence's copyrighted treatment and book. Defendants also obtained a direct financial benefit from the above alleged infringing activities.

81.     By producing *"Death At A funeral 2007,"* and *"Death At A Funeral 2010,"* films clearly copied from *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1,"* Defendants knowingly and willfully infringed, and will continue to infringe, Lawrence's copyright in *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"*

82.     Defendants knew or should have known that copying, distributing, public display of, and creating derivative works from Lawrence's treatment and book entitled the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* which Defendants copied and had no legitimate license to copy, distribute, publicly display or create derivative works from those materials infringed her copyrights in those materials.

83.     Plaintiff Lawrence states a claim upon which relief can be based against Defendants S. Kimmel, Sidney Kimmel Entertainment, SKE Creative, LLC, Target

Media Entertainment, GmbH, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D. Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries, A. Carr, Screen Gems, Parabolic Pictures Inc., Stable Way Entertainment, and John Does I through X whereby (1) A chain of events are established between the Plaintiff's work and the Defendant's "access" to that work (such as through "improper misappropriate and theft" through Defendants Fox by A. Baer, and G. Wigam constituting "access" to Lawrence's work (2) Defendants' copied verbatim the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* audiovisual CD, and (3) Defendants' continued the criminal activity by copying verbatim protected elements of Lawrence's storyline, plot, theme, logo, title, concept, such elements as shots, dialogue, poses, characters, graphic illustrations, production design, location, and the makings of the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* constituting "striking/substantial similarity" in contravention to the "Inverse Ratio Rule," (4) subject matter jurisdiction exits based on P. Lawrence registering a complete copyright of her treatment entitled the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* in June of 2010, and  making her the owner of the derivative work entitled *"Death At A funeral 2007," and "Death At A Funeral 2010;"* (5) Plaintiff is entitled to profits that are "attributable to infringement pursuant to 17 U.S.C. § 504(b) (1994) for the infringing elements of the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1,"* in violation of 17 U.S.C. §§101, and 201.

84.    The Plaintiff asserts her *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* copy written CD was stolen by the above mentioned Defendants' constituting a "theft/improper appropriation": (1) Lawrence's story idea is original; (2) Lawrence did submit her idea to Sony; (3) the copyrighted material was understood to be for sale; (4) the  copyrighted material was stolen; (5) are there are "antitrust/antiracketeering injuries" and damages".

85.    The Plaintiff asserts said Defendants made agreements regarding the *"Death At A Funeral 2010"* story without first getting authorization from co-author Plaintiff Lawrence to use her copyrighted *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* story that had been stolen and placed into *"Death At A funeral 2007,"* and *"Death At A Funeral 2010."*

86.    Plaintiff Lawrence is "sole legal owner" of the *"Death At A funeral 2007,"* and *"Death At A Funeral 2010"* motion picture copyrights pursuant to 17 U.S.C. §201 as demonstrated by Defendants   S. Kimmel, Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D. Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries,  A. Carr, Screen Gems, Parabolic Pictures Inc., Stable Way Entertainment  "ripping off" / "coping verbatim" the audiovisual CD likeness, image, storyline, plot, concept, theme, logos, characters, graphic illustrations, and the makings of the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* of which such "racketeering conduct" was committed.

87.    Each and every agreement reached by S. Kimmel, Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D. Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries,  A. Carr, Screen Gems, Parabolic Pictures Inc., Stable Way Entertainment from 2006-05-25 to 2010-04-14 regarding the *"Death At A funeral 2007,"* and *"Death At A Funeral 2010"* has been legally inoperative because Defendants willfully breached the settlement agreement by stealing from the audiovisual CD, and Plaintiff Lawrence was not included or compensated in accordance with 17 U.S.C. 106 and 201.

88.    Plaintiff Pamella Lawrence requests that the Court declare the Defendants' copyright null and void and/or cancelled, as well as, each business agreement void as against public policy based upon offenses in the registrations that violated 17 U.S.C.

§201, and 17 U.S.C. § 506 (e) as to [V3538 D318 P1-3] and [PA0001671381] that became the basis of every other illegal *"Death At A funeral 2007,"* and *"Death At A Funeral 2010"* registration under 28 U.S.C. §§2201 and 2202, and that the defendants disgorge any and all profits that resulted from the illegal concealment of Plaintiff's contribution to authorship that was done by the same unlawful modus operandi that was used to conceal the rights of Pamella Lawrence in the production of the first *Death At A funeral 2007"*.

89.    SKE Creative, LLC, Target Media Entertainment, GmbH, Sidney Kimmel Entertainment made *"Death At A funeral 2007,"* released on August 17, 2007 (US), *and "Death At A Funeral 2010"* that was released on April 16, 2010 on budgets of $9 million and later $21 million with a gross revenue of $88,546,265 million with a copyright registrations of [V3538 D318 P1-3] without disclosing the contribution of Plaintiff Lawrence to the story through *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* .

90.    The copyright of "Death At A funeral 2007," and "Death At A Funeral 2010." were registered as [V3538 D318 P1-3], and [PA0001671381] without any reference to the co-authorship of Plaintiff Lawrence.

91.    Based upon the aforementioned illegal practices in defiance of the public laws of the United States, particularly pursuant to 17 U.S.C. §201, 17 U.S.C. §106, 17 U.S.C. §506 (e), 18 U.S.C. §1621 (a), 18 U.S.C. §371, 18 U.S.C. §2, 18 U.S.C. § 3, and 18 U.S.C. § 4., all contracts by Defendants that omitted Pamella Lawrence as the Owner are hereby void against public policy including those with SKE Creative, LLC, Target Media Entertainment, GmbH,   Sidney Kimmel Entertainment. The Defendants encroached upon the Plaintiff's exclusive rights that are granted to a copyright owner pursuant to 17 U.S.C. § 106, which Infringement is implicitly defined in 17 U.S.C. § 501(a): Anyone who violates any of the exclusive rights of the copyright owner as provided by [17 U.S.C. §§ 106-122] or of the author as provided by [17 U.S.C. § 106A], or who imports copies in and/or outside of United States in violation of [17 U.S.C. § 602], is an infringer of the copyright. Section 106 of Title 17 sets out the copyright

owner's exclusive rights. These rights consist of the rights "to do and to authorize" the following: (I) to reproduce a work in copies § 106(1), (II) to prepare derivative works, § 106(2),  (III) to distribute copies of the work to the public, § 106(3); (IV) to perform the work publicly (for certain types of works), (V) § 106(4), (6) to display a work publicly (for certain types of works), § 106.

92.     As a direct and proximate result of Defendants' copyright infringement and breach of settlement agreement, Lawrence has suffered and will continue to suffer "anti-trust injuries and/or anti-racketeering injuries, and damages, much of which cannot be reasonably or adequately measured or compensated in damages. Such injuries and damages include, but are not limited to, the fact that Lawrence has been unfairly deprived of: (1) just compensation, including the income from selling the film rights to "*Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1*" ; and (2) appropriate recognition, including a screen credit, to which she is entitled, as well as, recognition on the actual copyrights for *"Death At A funeral 2007," and "Death At A Funeral 2010"*.  Lawrence is entitled to damages in an amount to be proven at trial, including profits attributable to the infringement not taken into account in computing actual damages under 17 U.S.C. § 504, Cal. Penal Code §496, and Cal. Penal Code § 502.

93.     Defendants' infringement of Lawrence's copyrights has also caused her irreparable injury. Unless restrained and enjoined, Defendants' will continue to commit such acts. Lawrence's remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Lawrence to remedies including injunctive relief as provided by 17 U.S.C. § 101 et. seq., 17 U.S.C. § 501a and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

94.     Defendants' efforts to make contracts regarding copyrighted material that they did not own pursuant to 17 U.S.C. § 101 et. seq. (1988), 17 U.S.C. §§§§ 201, and 106(1), 106(2), 106(3) are void against public policy under 17 U.S.C. § 501a, 17 U.S.C. § 506 (e).

95.    All of the Defendants' participated in the production, distribution, use, and exploitation of *"Death At A Funeral 2010"* film. Defendants' knowingly and willfully infringed, authorized others to infringe, and will continue to infringe Plaintiff's copyrights in the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"*.

96.    Plaintiff Lawrence has been damaged by Defendants including SKE Creative, LLC, Target Media Entertainment, GmbH, Sidney Kimmel Entertainment between August 17, 2007 and April 16, 2010 in an amount in excess of $20,000,000.00 dollars.

## SECOND CAUSE OF ACTION

### (Contributory Infringement)

### (By Pamella Lawrence Against All of the Defendants)

97.    Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 96 as if fully set forth herein:

98.    Upon information and belief, Defendants, knew or had reason to know of the infringing activity.

99.    Had Defendants' not willfully breached the settlement agreement by copying verbatim the story from the Pamella's CD, they would realized that Plaintiff had the ability to also copyright the material on the CD. Either Defendants' failed to perform their due diligence in assuring that *Death At A funeral 2010* was not infringing on another Plaintiff's copyrighted *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"*, or the Defendants' took a gamble researching different copyrights of the Plaintiff for her CD, and did not care about infringing Plaintiff's work. Nonetheless, Defendants' situation, the Defendants knew or should have known that S. Kimmel, Sidney Kimmel Entertainment, J. Tauber, A. Baer, B. Toller, G. Wigam was infringing Plaintiff's copyrighted material.

100.    Upon information and belief, Defendants', intentionally fraudulently induced and/or materially contributed to S. Kimmel, SKE Creative, LLC, Target Media Entertainment, GmbH, Sidney Kimmel Entertainment, J. Tauber, A. Baer, B. Toller, G.

Wigam, infringing activity by copying, using, modifying, reproducing, displaying, and disbuting Plaintiff's copyrighted material.

101.   Defendants' copyright infringement is the proximate cause of Plaintiff's injury.

102.   WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### (Vicarious Copyright Infringement)

### (By Pamella Lawrence Against All of the Defendants)

103.   Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 102 as if fully set forth herein:

104.   Defendants from S. Kimmel, Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D. Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries,  A. Carr, Screen Gems, Parabolic Pictures Inc., and Stable Way Entertainment, had the right, authority, and the ability to control or supervise  A. Baer, and G. Wigam. Defendants' actions, failures, and omissions, which violated Plaintiff's copyright in the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* story and Plaintiff's rights.

105.   Defendants  Columbia Pictures Industries,  Screen Gems, Parabolic Pictures Inc., and Stable Way Entertainment, Wonderful Films Corporation, Chris Rock Enterprises Inc.,  and John Does  I through X had knowledge of Plaintiff's rights and interests in the "" during the development, production, distribution, and exploitation of *Death At A funeral 2010* film.

106.   Defendant's obtained a direct financial interest, financial advantage, and/or economic consideration from the infringement.

107.   WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### (Unfair Competition –Lanham Act – 15 U.S.C. §§1117, 1125(a))

**(By Pamella Lawrence against All Defendants)**

108. Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 107 as if fully set forth herein:

109. By claiming that *"Death At A funeral 2007,"* and *"Death At A Funeral 2010"* Rock's bran child, and ignoring *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"*, the film upon which *"Death At A funeral 2007,"* and *"Death At A Funeral 2010"* are actually derivatives, Defendants have made and will continue to make a false and misleading designation about the origin of  said films in violation of Lanham Act, 15 U.S.C. §§ 1117, and 1125(a).

110. As a result of this false and misleading designation, it is likely that the public who will view *"Death At A Funeral 2010"* at theaters, on television and elsewhere will be confused about the source upon which *"Death At A Funeral 2010"* is based.

111. Lawrence is informed and believes, and on that basis alleges that *"Death At A Funeral 2010"* will be placed in the stream of commerce in every state and throughout the world.

112. As a direct and proximate result of Defendants' unfair competition, Lawrence has suffered and will continue to suffer damages, much of which cannot be reasonably or adequately measured or compensated in damages. Such "anti-trust and/or antiracketeering injuries" and damage include, but are not limited to, the fact that Lawrence has been unfairly deprived as a women of: (1) just compensation, including the income from selling the distribution rights to *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"*; and (2) appropriate recognition, including correcting the copyright registration by adding Lawrence's name to line 6, screen credit, to which she is entitled.

113. As a direct and proximate result of Defendants' conduct, Lawrence has suffered damages in an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars.

# FIFTH CAUSE OF ACTION

## (Common Law Unfair Competition)

## (By Pamella Lawrence Against Defendants G. Wigam, A. Baer, Dean Craig,

## Columbia Pictures, Tristar, SPE

## SKE Creative, LLC, Behave Productions

## Target Media Entertainment, Sidney Kimmel Entertainment)

114.    Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 113 as if fully set forth herein:

115.    California common law make unlawful unfair competition in the form of any unfair, fraudulent or predatory business practice.

116.    The foregoing acts of Defendants, as alleged herein, constitute unlawful business practices as Defendants have violated the law as set forth above in the First through Second Cause of Action and Claims for Relief that came forth as a proximate result of "breach of a settlement agreement".

117.    In 1890, the Congress of the United States created the "Sherman Antitrust Act" to deal with modern day "combinations" of businesses and of capital organized and directed to control the market by suppression of competition from inner city economically challenged zones in the marketing of goods and services, and "Conspiracies Against Trade," perpetrated by said Defendants against Plaintiff for such violations of 15 U.S.C. 1, Sherman Act 1, and Sherman Act 2.

118.    Defendants' conspired to commit "antitrust injuries" against Plaintiff and (1) there is the existence of breached "contract," pertaining to "wrongful acquisitions" of copyrights pertaining to "false declarations and oaths of ownership" to *Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* (2) Defendants or entities intended to harm or restrain interstate trade or commerce; and (3) and the restraint actually caused an "antitrust injury" to Lawrence for the "theft," and "fraud acquisition" of her copyrights, and subjecting her to other wrongful acts (hereinafter referred to as "acts of wrongful acquisition"), for her work in violation of the Sherman Act Section 1 and Sherman Act 2.

119.    The Plaintiff asserts the above Defendants maintained (1) possession of monopoly power by having control of the *"Death At A Funeral 2007" and "Death At A Funeral 2010"* copyrights in all relevant markets by "willfully omitting" Lawrence's name on line six of the copyright registration; (2) Defendants carried out willful acquisition or maintenance of that power through "false declarations and oaths of ownership" for said copyrights to the U.S. Copyright Office; and (3) Defendants caused a "antitrust injury" to Lawrence by failing to allot her screen credit and pay her any royalties.

120.    The Plaintiff asserts said Defendants listed above showed (1) a specific intent to control prices and destroy the "female competition" from the "inner city" in all relevant markets by distributing *"Death At A Funeral"* through publicly-accessible computer networks, movie theater screens, CDs' and DVD while omitting Lawrence's name in the credits and titles of the films and on line six of the copyright registration filed with the U.S. copyright office; (2) Defendants predatory or anticompetitive conduct accomplished the monopolization scheme (3) Defendants relied upon the dangerous probability of success, because they knew Lawrence did not have an attorney and was from Jamaica.

121.    Defendants' have failed to ameliorate the problem and also evince their deliberate and reckless indifference toward Lawrence and her inaliable rights of ownership.

122.    The "false oath of ownership" were made by Defendants in order to commit theft of her copyrights which they did not own. Defendants' violation of the Section 1 and Section 2 of the Sherman Act has imposed a disparate impact and are beyond outrageous and warrants – among other sanctions – an award of punitive damages.

123.    As a direct and proximate result of Defendants' conduct, Lawrence has suffered damages in an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars.

124.    The aforesaid acts of Defendants were done with oppression, premeditated fraud and malice, with intent to vex, injure and harass Plaintiff, and with conscious

disregard of Plaintiff's rights. Defendants acted with despicable conduct and with conscious disregard of the inalienable right of ownership of Plaintiff by committing the acts alleged hereinabove, entitling Plaintiff to an aware of exemplary and /or punitive damages.

## SIXTH CAUSE OF ACTION

### (Breach of Contract)

### (By Pamella Lawrence against All Defendants)

125.   Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 124 as if fully set forth herein:

126.   At all relevant times since Lawrence pitched her store to Columbia after the book and the audio visual CD entitled *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994",* and *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1";* A. Baer, and G. Wigam, Columbia Pictures Industries, and Screen Gems understood and agreed that the elements of said book and audiovisual CD could be used only if they paid Lawrence for the "reasonable value" of such use.

127.   With this knowledge, said Defendants breached the settlement agreement and produced *"Death At A Funeral 2010"* using without consent Lawrence's likeness and image from *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1".*

128.   Lawrence has not received any compensation from S. Kimmel, Sidney Kimmel Entertainment, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D. Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries,  A. Carr, Screen Gems, Parabolic Pictures Inc., and Stable Way Entertainment for its use of Lawrence's copyrighted work.

129.   Accordingly, S. Kimmel, Sidney Kimmel Entertainment, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D.

Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries,  A. Carr, Screen Gems, Parabolic Pictures Inc., Stable Way Entertainment have breached its implied-in-fact agreement and/or settlement agreement with Lawrence.

130.   As a direct proximate result of Defendants' conduct Lawrence has suffered damages in an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars.

## SEVENTH CAUSE OF ACTION

### (Tortious Breach of Confidence)

### (By Pamella Lawrence against All Defendants)

131.   Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 130 as if fully set forth herein:

132.   When Lawrence agreed to pitch *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994"* at Columbia Pictures encompassing the storyline of a "Naked Women" and/or "Naked Man," it was with the express understanding that the novel ideas expressed in said book and audio visual CD would remain confidential. A. Baer and G. Wigam gained Lawrence's confidence by telling her straight forward after the pitch that they were not interested in purchasing her work. Once Plaintiff brought forth suit in Superior Court of Los Angeles, case BC229032, the Plaintiff did not execute a "settlement agreement" giving Defendants authorization and permission to make derivative film projects from my copyrighted work product or to plagiarize elements from my CD. As a proximate result of fraudulent procuring Lawrence's signature, a confidential relationship was formed between A. Baer and G. Wigam.

133.   . Defendants A. Baer and G. Wigam breached the settlement agreement and the duty to keep the ideas expressed in *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* confidential by wrongfully disclosing the ideas to other writers, producers, the director and ultimately to other Defendants and the public at large.

34

134.    As a direct proximate result of Defendants' conduct, Lawrence has suffered damages in an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars.

135.    The aforesaid acts of Defendants were done with oppression, fraud and malice, with the intent to vex, injure and harass Plaintiff, and with conscious disregard of Plaintiff's rights. Defendants acted with despicable conduct and with conscious disregard of the rights of Plaintiff by committing the acts alleged hereinabove, entitling Plaintiff to an award of exemplary and/or punitive damages.

## EIGHTH CAUSE OF ACTION

### (Quantum Meruit)

### (By Pamella Lawrence against All Defendants)

136.    Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 135 as if fully set forth herein:

137.    The real life story of Lawrence experiencing a brutal assault at Jamaican funeral where she was stripped of her clothing in front of spectators is a heart wrenching subject matter for "*Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1*".

138.    Defendants S. Kimmel, Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D. Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries,  A. Carr, Screen Gems, Parabolic Pictures Inc., Stable Way Entertainment misappropriated the fruits of Lawrence's labor by using her image and likeness /work without her consent.

139.    The reasonable value of Lawrence's services is in an amount in excess of $20,000,000.00 dollars.

## NINETH CAUSE OF ACTION

### (Fraud and Deceit)

### (By Pamella Lawrence against A. Baer and G. Wigam, SKE Creative, LLC, Dean Craig, Target Media Entertainment)

140.   Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 139 as if fully set forth herein:

141.   On March 19, 1998, after 3:00 p.m in a follow up to the William Morris Agency relinquishing Pamella Lawrence book and video tape to Sony Pictures Entertainment, Columbia Pictures, and G. Wigam, Co-Chairman and A. Baer, VP of Production for Tristar Pictures, Columbia, and SPE the Defendants through a series of representations made and represented to Lawrence that they wanted her to "pitch" her story idea which they knew was for sale and to leave a copy of her book entitled *Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994,* and video, including research materials within their possession.

142.   In fact, A. Baer and G. Wigam had no intention of helping Lawrence. In reliance of A. Baer and G. Wigam's representation, Lawrence agreed to pitch *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994"* thereby disclosing her work and the ideas contained therein to parties who intended on misappropriating the ideas, and later filing a false oath of ownership with the United States copyright office under a different title in violation of 17 U.S.C. § 201.

143.   At the time A. Baer, and G. Wigam made the representations to Lawrence, Defendants' knew that the representations were false.

144.   Had Lawrence known the true facts, she would not have agreed to a pitch of *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994"* nor left within A. Baer, and G. Wigam possession a copy of her video tape and invaluable research materials.

145.   Lawrence did not discover that A. Baer, and G. Wigam, Columbia Pictures, Tristar Pictures, Screen Gems, Sony Pictures Entertainment breached the settlement agreement until she attended a screening of *"Death At A Funeral 2010"*. (Exh.    Movie Receipt)

146.   In May 25, 2006, Defendants Dean Craig, SKE Creative, LLC, Behave Productions, and Target Media Entertainment filed a fraudulent copyright with the Registrar of Copyrights failing to disclose Lawrence's name of line 6 of the copyright

registration to the U.S. Registrar of Copyrights in violation to 17 U.S.C. § 2, 17 U.S.C. § 3, 17 U.S.C. § 4, 17 U.S.C. § 101, and 17 U.S.C. § 201.

147. On May 14, 2010, Defendants Screen Gems, Inc. Labute, Neil, Parabolic Picture Production, Stable Way Entertainment Production filed a fraudulent copyright with the Registrar of Copyrights failing to disclose Lawrence's name of line 6 of the copyright registration to the U.S. Registrar of Copyrights in violation to 17 U.S.C. § 2, 17 U.S.C. § 3, 17 U.S.C. §4, 17 U.S.C. § 101, and 17 U.S.C. § 201.

148. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in a sum to be proven at trial, is in an amount in excess of $20,000,000.00 dollars.

149. The aforesaid acts of Defendants were done with oppression, fraud and malice, with the intent to vex, injure and harass Plaintiff, and with conscious disregard of Plaintiff's inalienable rights of ownership. Defendants acted with despicable conduct and with conscious disregard of the rights of Plaintiff by committing the acts alleged hereinabove, entitling Plaintiff to an award of exemplary and/or punitive damages.

## TENTH CAUSE OF ACTION

## ACCOUNTING

### (By Pamella Lawrence against All Defendants)

150. Plaintiff Lawrence re-alleges the allegations contained in paragraph 1 through 149 as if fully set forth herein:

151. Based on the actions and deceit of all the Defendants' S. Kimmel, Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D. Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries, A. Carr, Screen Gems, Parabolic Pictures Inc., Stable Way Entertainment and John Does I through X the Plaintiff is entitled to recovery by virtue of claims for relief set forth above, the value of the Copyrights, as well as, the proceeds and dividends derived from the exploitation of the Copyrights for *Death At A*

*funeral 2007," and "Death At A Funeral 2010"* of which, clearly violated 17 U.S.C. §101, 17 U.S.C. § 101, 17 U.S.C. §409 (1) and (11) and 17 U.S.C. §408 (d).

152.    The Plaintiff asserts and alleges her registration with the Copyright Office preceded all filing by the Defendants in violation of 17 U.S.C. §201, 17 U.S.C. §106, 18 U.S.C. 1621 (a), 18 U.S.C. 1962 (c), Section 1 and Section 2 of the Sherman Antitrust Act, 17 U.S.C. §506 (a) (1) as an act of criminal willful infringement associated with 18 U.S.C. §2319 as an act of racketeering under 18 U.S.C. §1961 (1). The current value of the Copyrights, dividends from the exploitation of Copyrights and the amount of the proceeds, to whom the proceeds where paid, or where they where reinvested, as cited above and the distribution of said proceeds, dividends and profits are so complicated that it can not be determined without accounting. Moreover this information concerning the Copyrights for *"Death At A Funeral* "franchise is uniquely within the knowledge of the Defendants. The amount due to the true and lawful owner of the Copyrights would be shown through an accounting.

## ELEVENTH CAUSE OF ACTION

### Unfair Competition – Cal. Bus. & Prof. Code § 17200 *et. seq.*

### (By Lawrence Against All Defendants)

153.    Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 152 as if fully set forth herein:

154.    Defendants' Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, J. Tauber, A. Baer, G. Wigam, W., C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries/SPE, Tristar, Screen Gems, Parabolic Pictures Inc., Stable Way Entertainment and John Does  I through X wrongful acts of omission excluding Plaintiff's name of line six of the copyright registration constitute acts including fraud, theft, interference with business relationships, and other illegal acts and practices as alleged above, all in an effort to gain unfair competitive advantage over Lawrence.

155.    These unlawful business acts or practices were committed pursuant to business activity related to providing unauthorized copying, and distributing Lawrence's

copyrighted *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* book and CD.

156.   The acts and conduct of Defendants constitute fraudulent, unlawful, and unfair competition as defined by California Bus. & Prof. Code §§ 17200, *et. seq.*

157.   Defendants' wrongful conduct, acts, and omissions alleged hereinabove constitute unlawful, unfair business practices and unfair competition under California Business and Professional Code §§ 17500 *et. seq.,* and under the common law.

158.   Defendants' conduct constitutes violations of numerous state and federal statutes and codes, including, but not limited to, violation 17 U.S.C. § 506, receipt of stolen property, Cal. Penal Code § 496, unauthorized copying of Lawrence's copyrighted material, Cal. Penal Code § 502, wire fraud, 18 U.S.C. § 1343, fraud and 17 U.S.C. §201, and 17 U.S.C. §106. Defendants' conduct also intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and unjust enrichment.

159.   Defendants have improperly and unlawfully taken commercial advantage of Lawrence's investment in the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1,"* proprietary, and copyrighted book and CD. In light of Defendants' conduct, it would be inequitable to allow Defendants to retain the benefit of the funds obtained though the unauthorized and unlawful use of Lawrence's property.

160.   Defendants' unfair business practices have unjustly minimized Lawrence's competitive advantage and have caused and are causing her to suffer damages.

161.   As a result of such unfair competition, Lawrence has also suffered irreparable antiracketeering/antitrust injuries and, unless Defendants are enjoined from such unfair competition, will continue to suffer irreparable injury, whereby Lawrence has no adequate remedy at law.

162.   Defendants should be compelled to disgorge and/or restore any and all revenues, earnings, profits, compensation, and benefits they may have obtained in violation of California Business & Professions Code § 17200 et seq., including, but not

1 limited to, returning the any revenue earned from the unlawful and unfair use of
2 Lawrence's stolen property, and should be enjoined from further unlawful, unfair, and
3 deceptive business practices.

4 163.   Plaintiff are informed and believe and thereon allege that Defendants'
5 wrongful acts wrongful conduct, acts of omissions were conducted in an intentional,
6 malicious, calculated and oppressive manner in conscious disregard for Plaintiff's rights,
7 health and feelings, and knowing and intentionally injured and damaged Plaintiff, which
8 conduct constituted oppression and malice as defined by California Civil Code § 3924.
9 In accordance with California Civil Code § 3924, Plaintiff is entitled to punitive
10 damages in an amount sufficient to punish Defendants, to be assessed at trial.

## TWELFTH CAUSE OF ACTION

### Intentional Interference With Prospective Economic Advantage

### (By Lawrence Against All Defendants)

14 164.   Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1
15 through 163 as if fully set forth herein:

16 165.   Lawrence has and had an expectancy of an advantageous economic
17 relationships with prospective, movie studios, banks, insurance companies, hedge funds,
18 credit institutions, movie distributors and to license her copyrighted material entitled the
19 *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994,*
20 *Jamaican Volume 1"*.

21 166.   These relationships contained the probability of future economic benefit in
22 the form of profitable movie contracts, licensees, distribution contracts, and lines of
23 credit. Had Defendants refrained from engaging in the unlawful and wrongful conduct
24 described in this complaint, there is a substantial probability that Lawrence support
25 customers would have initiated, or expanded support contracts and licensing deals with
26 Lawrence rather than Defendants.

27 167.   Defendants were aware of these economic relationships and intended to
28 interfere with and disrupt them by wrongfully: (1) stealing her copyrights, (2)

concealment of the theft from the copyright office, (3) distribution of stolen goods, and, (4) selling her copyrights to third parties.

168.    Defendants' conduct was wrongful by a measure beyond the fact of their interference itself. Defendants gained unauthorized use of Lawrence's copyrighted material through G. Wigam and Amy Baer constituting a theft.

169.    This conduct, as alleged above, constitutes violations of numerous state and federal statutes and codes, including, but not limited to, violation of receipt of stolen property, Cal. Penal Code §496, Cal. Penal Code § 502, wire fraud, 18 U.S.C. § 1343, fraud and related activity of racketeering in violation of 17 U.S.C. §201, 17 U.S.C. §106, and 17 U.S.C. § 506 (e). Defendants' conduct also constitutes unjust enrichment.

170.    As a result of Defendants' acts, they have blocked Lawrence from movie contracting over a 9 year period, as well as, impeded the above-described relationships which have been actually disrupted, causing certain current and prospective support clients to contract with Defendants instead of Lawrence for their movie projects with Lawrence's stolen audio visual CD work therein.

171.    As a direct and proximate result of Defendants' actions, Lawrence has suffered economic harm, including, but not limited to, loss of profits from sales, movie contracting or licenses to current and potential customers of Lawrence support copyrighted material.

172.    Defendants' wrongful conduct was a substantial factor in causing this harm.

173.    Unless Defendants are restrained by appropriate injunctive relief, their actions are likely to recur and will cause Lawrence irreparable injury for which there is no adequate remedy at law.

174.    Defendants' interference with Lawrence's prospective economic advantage with its current and future customers, as described above, was willful, malicious, oppressive, and in conscious disregard of Lawrence's rights, and Lawrence is therefore entitled to an award of punitive damages to punish their wrongful conduct and deter future wrongful conduct.

## THIRTEENTH CAUSE OF ACTION

## Negligent Interference With Prospective Economic Advantage
## (By Pamella Lawrence Against All Defendants)

175.   Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 174 as if fully set forth herein:

176.   Lawrence has and had an expectancy of an advantageous economic relationships with  prospective, movie studios, banks, insurance companies, hedge funds, credit institutions, movie distributors and to license her copyrighted material entitled the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"*.

177.    These relationships contained the probability of future economic benefit in the form of profitable movie contracts, licensees, distribution contracts, and lines of credit. Had Defendants refrained from engaging in the unlawful and wrongful conduct described in this complaint, there is a substantial probability that Lawrence support customers would have initiated, or expanded support contracts and licensing deals with Lawrence rather than Defendants.

178.   Defendants were aware of these economic relationships and intended to interfere with and disrupt them by wrongfully: (1) stealing her copyrights, (2) concealment of the theft from the copyright office, (3) distribution of stolen goods, and, (4) selling her copyrights to third parties.

179.   Defendants' conduct was wrongful by a measure beyond the fact of their interference itself. Defendants gained unauthorized use of Lawrence's copyrighted material through G. Wigam and Amy Baer constituting a theft.

180.    This conduct, as alleged above, constitutes violations of numerous state and federal statutes and codes, including, but not limited to, violation of  receipt of stolen property, Cal. Penal Code §496, Cal. Penal Code § 502, wire fraud, 18 U.S.C. § 1343, fraud and related activity of racketeering in violation of 17 U.S.C. § 201, 17 U.S.C. §106, and 17 U.S.C. §506 (e). Defendants' conduct also constitutes unjust enrichment.

181.   As a result of Defendants' acts, they have blocked Lawrence from movie contracting over a 9 year period, as well as, impeded the above-described relationships

which have been actually disrupted, causing certain current and prospective support clients to contract with Defendants instead of Lawrence for their movie projects with Lawrence's stolen audio visual CD work therein.

182.    As a direct and proximate result of Defendants' actions, Lawrence has suffered economic harm, including, but not limited to, loss of profits from sales, movie contracting or licenses to current and potential customers of Lawrence support copyrighted material.

183.    Defendants' wrongful conduct was a substantial factor in causing this harm.

184.    Unless Defendants are restrained by appropriate injunctive relief, their actions are likely to recur and will cause Lawrence irreparable injury for which there is no adequate remedy at law.

185.    Defendants' interference with Lawrence's prospective economic advantage with its current and future customers, as described above, was willful, malicious, oppressive, and in conscious disregard of Lawrence's rights, and Lawrence is therefore entitled to an award of punitive damages to punish their wrongful conduct and deter future wrongful conduct.

## FOURTEENTH CAUSE OF ACTION

### Unjust Enrichment/Restitution

### (By Pamella Lawrence against All Defendants)

186.    Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 185 as if fully set forth herein:

187.    Defendants' S. Kimmel, Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D. Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries,  A. Carr, Screen Gems, Parabolic Pictures Inc., Stable Way Entertainment unjustly received benefits at the expense of Lawrence through their wrongful conduct, including Defendants' copying and theft of the *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* constituting access to and unauthorized use of

copyrighted material, and interference with Lawrence's business relationships and other unfair business practices, as well as Defendants which took substantial time and money for her to develop. Defendants continue to unjustly retain these benefits at the expense of Lawrence. It would be unjust for Defendants to retain any value they obtained as a result of their wrongful conduct.

188.   Lawrence is accordingly entitled to full restitution of all amounts in which Defendants have been unjustly enriched by violating the "confidential" or "fiduciary" relationship.

## FIFTEENTH CAUSE OF ACTION

### Gender Discrimination

### 42 U.S.C. §§1981 *et. seq.*, and 42 U.S.C. 1982 *et. seq.*

### (By Pamella Lawrence against All Defendants)

189.   Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 188 as if fully set forth herein:

190.   Plaintiff Lawrence is a female within the jurisdiction of the U.S. and shall have the same right in every State and Territory to make and enforce private contracts, to sue said Defendants, be parties, give evidence, and to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

191.   Plaintiff Lawrence asserts as a citizen that "[a]ll citizens of the U.S. shall have the same right, in every State and Territory, as enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

192.   Plaintiff Lawrence assert Defendants S. Kimmel, Sidney Kimmel Entertainment, SKE Creative, LLC, Target Media Entertainment, GmbH, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D. Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries,  A. Carr, Screen Gems, Parabolic Pictures Inc., Stable Way Entertainment and John Does  I through X "under the color of state authority,"

impaired/blocked Lawrence's right to "make and enforce private contracts" by failing to correct the *Death At A Funeral*" copyrights and allot her credit on line 6 of the copyright registrations and pay her royalties.

193.    Plaintiff Lawrence asserts said Defendants impaired/blocked her exclusive right to own/"hold" the *Death At A Funeral*" copyrights, lease, sell, convey real and personal property, to reproduce, distribute, and, in the case of certain *Death At A Funeral*" works, publicly perform or display the work; to prepare derivative works; in the case of sound recordings, to perform the work publicly by means of a digital audio transmission; or to license others to engage in the same acts under specific terms and conditions with more favorable terms because of gender.

194.    Upon information and belief, the primary reason why "Dean Craig" was used as a "cover" was because the Plaintiff is a female who desired to write  in the genre of comedy.

195.    Industry and business executives had an unwritten agreement that females would not write or direct or become "Executive Producers" in the genre of comedy, one of the most revenue generating genres in movie making.

196.    Plaintiff Lawrence was subjected to an "antitrust injury," and denied "movie contracting" deals including but not limited to a "financial injury" as a proximate result of Defendants' gender discrimination in regarding the *Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1*" .

197.    From 1928 through February of 2010, there has been a consistent pattern of discriminating against female writers and directors in science fiction filmmaking as well as filmmaking in general. As a result, it took approximately 82 years for Kathryn Bigelow, a female, to receive an academy award for her vision and work as "best director" and "best picture". There has been a conspiracy and practice to suppress the rights of Women in the film making industry for approximately 82 years.

a.      "The final two awards at the 82nd Academy Awards re-wrote history as Kathryn Bigelow won the Oscar for Best Director. Bigelow became the first female to win the award and beat out former beau James Cameron." (IMDB: http://www.imdb.com/news/ni1724058/)

198. By this discrimination in "movie contracting" implemented and perpetrated by G. Wigam and A. Baer against plaintiff Lawrence with the tacit approval of Sony Pictures Entertainment, Tristar, Columbia Pictures, and Screen Gems, Lawrence was denied the same "movie contractual treatment," and "credit on the copyright," that was granted to Dean Craig, as an "Executive Producer" in corporate ranks of Sony, as well as, Chris Rock, S. Kimmel, Sidney Kimmel Entertainment in the same circumstance involving the same copyright registration and malfeasance.

199. Because of discrimination based on gender, Defendants and John Does I through X willfully blocked Lawrence's right to "movie contracting" regarding comedy screen plays in violation of 42 U.S.C. §1981 (a), (b), and (c), 42 U.S.C. §1982.

200. Plaintiff's story was confirmed to be valuable in the hands of S. Kimmel, Sidney Kimmel Entertainment, J. Tauber, A. Baer, B. Toller, G. Wigam, W. Horberg, D. Phillip, Wonderful Films, L. Malkin, D. Craig, S. Stallings, F. Oz, C. Rock, N. LaBute, Chris Rock Enterprises, Columbia Pictures Industries, A. Carr, Screen Gems, Parabolic Pictures Inc., Stable Way Entertainment for "Death At A Funeral." But when the same story was found to be in the hands of its true owner, Plaintiff Lawrence, it was not valuable for commercial use and negotiations with SPE, Columbia, and Screen Gems as it had been for Dean Craig.

201. When Dean Craig, S. Kimmel, SKE Creative, LLC, J. Tauber, A. Baer, and G. Wigam obtained the illusory rights without Plaintiff Lawrence's consent, they were able to acquire financing and make *Death At A funeral 2007," and "Death At A Funeral 2010"* with a budgets collectively in the amount of $29 million and received revenue of $88,564,265 million.

202. All producers and writers from the *"Death At A funeral 2007,"* and *"Death At A Funeral 2010"* through Sidney Kimmel Entertainment, SKE Creative, LLC that were financially successful, were able to raise funds and receive access to the "channels of distribution" to make a profit on the sequels.

203. These acts and industry practices of concealment of the offenses is an admission by conduct that the defendants all gave aid and custom to the discrimination

against the rights of females to contract in violation of 42 U.S.C. 1981, and 42 U.S.C. 1982, that culminated into damages to Plaintiff between and including July 2007 and February 2010. Based on the actions and deceit of all the Defendants and John Does I through X, the Plaintiff is entitled to recovery by virtue of claims for royalties and relief set forth above, the value of the copyrights, as well as, the proceeds and dividends derived from the exploitation of the copyrights for the *"Death At A funeral 2007,"* and *"Death At A Funeral 2010"* of which, clearly violated 17 U.S.C. §409 (1) and (11) and 17 U.S.C. §408 (d), 42 U.S.C. §1981, and 42 U.S.C. §1982.

204.    The Plaintiff asserts and alleges her registration with the Copyright Office preceded all filings by the Defendants in violation of 17 U.S.C. §201 as an act of willful criminal infringement associated with 18 U.S.C. §2319 as an act of racketeering under 18 U.S.C. §1961 (1). Moreover, this information concerning the Copyrights for *"Death At A funeral 2007,"* and *"Death At A Funeral 2010"* is uniquely within the knowledge of the Defendants.

## SIXTEENTH CAUSE OF ACTION

### (Violation of Cal. Bus. & Prof. Code §§5400, 17500)

### (By Pamela Lawrence Against All Defendants)

205.    Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 204 as if fully set forth herein:

206.    California Business and Professional Code §5400 states: "No advertising structure may be maintained unless the name of the person owning or maintaining it, is plainly displayed thereon."

207.    Upon information and belief, Defendants have maintained advertising structures for *"Death At A Funeral 2010"* film. Pursuant to Cal. Bus. & Prof. Code §5400, Plaintiff's name should be displayed upon all advertising structures, however, Defendants have failed to display Plaintiff's name.

208.    Defendants' false advertising is the proximate cause of Plaintiff's injury.

## SEVENTEENTH CAUSE OF ACTION

### (Declaratory Relief Re: Termination, 17 U.S.C. 304(c))

**(By Pamela Lawrence Against All Defendants)**

209.   Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 208  as if fully set forth herein:

210.   An actual controversy has arisen and now exists between Plaintiff Lawrence and Defendants under Federal copyright law, 17 U.S.C. 101 *et. seq.* in *"Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* and the usage of Lawrence's likeness, image, personal assault, and efforts in making *"Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* for which Plaintiff desires a declaration of rights .

211.   Lawrence desires a judicial determination of this issue. Furthermore, Plaintiff is requesting that the court to declare the Defendants fraudulent copyrights and any and all contract contracts including the "settlement agreements" to be null/void/terminated as they relate to *"Death At A funeral 2007,"* and *"Death At A Funeral 2010,"* [V3538 D318 P1-3], and [PA0001671381] to be void against public policy pursuant to 17 U.S.C. § 2, 17 U.S.C. §3, 17 U.S.C. § 4, 17 U.S.C. § 101, and 17 U.S.C. § 201.

212.   Such a declaration is necessary and appropriate at this time in order that Lawrence may ascertain her rights to compensation and credit for her contribution to *"Death At A funeral 2007,"* and *"Death At A Funeral 2010".*

213.   A declaration of the court is necessary pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 *et. seq.*, so that the Court may affirm Plaintiff's rights which were never granted to the Defendants.

## EIGHTEENTH CAUSE OF ACTION

### (Injunctive Relief)

**(By Plaintiff P. Lawrence Against All Defendants)**

214.   Plaintiff Lawrence re-alleges the allegations contained in paragraphs 1 through 213 as if fully set forth herein:

215.   Defendants' wrongful conduct described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Lawrence

in that such conduct, among other things, may prevent her from receiving appropriate credit for her contribution to *"Death At A funeral 2007,"* and *"Death At A Funeral 2010", Copyrights PAu 3-042-567, PAu 3-118-136,* V3574D995, PRE000002256, V3582D907, V3575D880, PAu003398919, PAu003118136, V3558D391, V3558D773, V3555D941, V3558D187, PAu003042567, V3576D758, V3565D622, V3574D848, PA0001666492, PA0001666495, V3543D536, V3545D307, V3565D622, V3565D622, V3538D318, VA0001700512, V3538D475, V3537D643. Additionally, release of *"Death At A Funeral 2010"* has drastically diminished the market value of *"Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, and "Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"*.

216.    Plaintiff requests remedies including injunctive relief as provided by 17 U.S.C. § 101 *et. seq.,* 17 U.S.C. § 501 and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

217.    Lawrence has no adequate remedy at law for her injuries that are threatened in that it will be impossible for Lawrence to determine the precise amount of damages she will suffer if Defendants' conduct is not restrained.

**WHEREFORE,** Plaintiff PAMELLA LAWRENCE prays for judgment against Defendants jointly and severally as follows:

**FIRST CAUSE OF ACTION**

1.    For such compensatory damages that Lawrence has sustained as a consequence of Defendants' illegal infringement of its copyrights, in an amount to be proven at trial, together with interest thereon as provided by law, in an amount in excess of $20,000,000.00 dollars;

2.    For an injunction ordering that Defendants and their agents and employees be permanently enjoined from infringing Lawrence's copyright in *"Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* in any manner, including distributing or showing

"*Death At A funeral 2007,*" and "*Death At A Funeral 2010*" without Lawrence's express consent.

3.   For royalties for 28 percent of past and future royalties and 66% of the gross profits for commercial use pursuant to *Three Boys Music Corp. v. Michael Bolton,* 212 F.3d 477 (9th Cir. 2000);  17 U.S.C. § 504(b) (1994).

4.   For accounting of all gains, profits and advantages Defendants derive from their infringement of Lawrence's copyright;

5.   For costs of suit, investigation work, consulting work and reasonable attorney's fees; and

6.   For such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

1.   For an amount to be proven at trial in an amount in excess of $20,000,000.00 dollars;

2.   For an injunction ordering that Defendants and their agents and employees be permanently enjoined from designating anything other than "*Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1*" as the inspiration and basis of "*Death At A funeral 2007,*" and "*Death At A Funeral 2010*".

3.   For treble damages as Lawrence has sustained as a consequence of Defendants' false designation of the origin of "*Death At A funeral 2007,*" and "*Death At A Funeral 2010*"

4.   For costs of suit, investigation work, consulting work and reasonable attorney's fees; and

5.   For such other and further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

1.   For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars; and an award of punitive and/or exemplary damages in an amount necessary to punish Defendants and/or deter them from their conduct;

2.  For an injunction ordering that Defendants and their agents and employees be permanently enjoined from infringing Lawrence's copyright in *"Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* in a manner, including distributing or showing *"Death At A funeral 2007,"* and *"Death At A Funeral 2010"* without Lawrence's express consent;

3.  For the costs of suit, and

4.  For such other and further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

1.  For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.  For the costs of suit, and

3.  For such other and further relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION

1.  For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars, and an award of punitive and/or exemplary damages in an amount necessary to punish Defendants and/or deter them from their conduct;

2.  For the costs of suit, and

3.  For such other and further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

1.  For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.  For the costs of suit, and

3.  For such other and further relief as the Court deems just and proper.

## SEVENTH CAUSE OF ACTION

1.  For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars, and an award of punitive and/or exemplary

damages in an amount necessary to punish Defendants and/or deter them from their conduct;

2.   For the costs of suit, and

3.   For such other and further relief as the Court deems just and proper.

## EIGHTH CAUSE OF ACTION

1.   For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.   For the costs of suit, and

3.   For such other and further relief as the Court deems just and proper.

## NINETH CAUSE OF ACTION

1.   For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.   For the costs of suit, and

3.   For such other and further relief as the Court deems just and proper.

## TENTH CAUSE OF ACTION

1.   For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.   For the costs of suit, and

3.   For such other and further relief as the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION

1.   For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.   For the costs of suit, and

3.   For such other and further relief as the Court deems just and proper.

## TWELFTH CAUSE OF ACTION

1.   For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.   For the costs of suit, and

3.   For such other and further relief as the Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION

1.   For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.   For the costs of suit, and

3.   For such other and further relief as the Court deems just and proper.

## FOURTEENTH CAUSE OF ACTION

1.   For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.   For the costs of suit, and

3.   For such other and further relief as the Court deems just and proper.

## FIFTEENTH CAUSE OF ACTION

1.   For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.   For the costs of suit, and

3.   For such other and further relief as the Court deems just and proper.

## SIXTEENTH CAUSE OF ACTION

1.   For an amount to be proven at trial, in an amount in excess of $20,000,000.00 dollars;

2.   For the costs of suit, and

3.   For such other and further relief as the Court deems just and proper

## SEVENTEENTH CAUSE OF ACTION

1.   For a declaration that Defendants infringed on Lawrence's copyright in *"Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* and copied her film; and

2.   For such other and further relief as the Court deems just and proper.

## EIGHTEENTH CAUSE OF ACTION

1.   For preliminary and permanent injunction ordering that Defendants and their agents and employees be enjoined from: (1) infringing on Lawrence's copyright in *"Caught On Video... The Most Embarrassing Moment de*

*Funeral, July 11, 1994, Jamaican Volume 1"* in any manner, including distributing and showing to *"Death At A Funeral 2010"* without Lawrence's consent; and (2) designating anything other than *"Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"* as the inspiration for *"Death At A Funeral 2010"*; and

2. For remedies including injunctive relief as provided by 17 U.S.C. § 101 et. seq., 17 U.S.C. § 501 and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

3. For such other and further relief as the Court deems just and proper.

4. Plaintiff is also entitled to attorney's fees and full costs pursuant to 17 U.S.C. § 505

5. Or for such amount as may be proper under 17 U.S.C. §504(c).

6. For judicial and declaratory relief under Sections 28 U.S.C. §§2201 and 2202 under the Declaratory Judgment Act:

7. For royalties for 28 percent of past and future royalties and 66% of the gross profits for commercial use.

8. For such other relief as the Court deems just and proper in the premises.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventeenth Amendment of the U.S. Constitution and the Federal Rules of Civil Procedure 38(a) and 38(b) the Plaintiff requests a trial by jury on each claim for relief alleged in this Complaint.

Dated: June 24, 2010                    RESPECTFULLY SUBMITTED,

Pamella Lawrence, Pro-se

1

## CERTICATE OF MAILING

I hereby certify that on this __25__ day of June 2010, I caused to be mailed via first class U.S.

2

mail, postage pre-paid, a true and correct copy of the foregoing this **Civil Complaint + Summons** to

3

the following:

4

| | |
|---|---|
| Agent for Service of Process: Leonard Venger<br>Sony Pictures Entertainment Inc.<br>10202 W. Washington Blvd.<br>SP 1132<br>Culver City, CA 90232 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| Agent for Service of Process:<br>Stephen D. Barnes<br>Chris Rock Enterprises, Inc.<br>2000 Avenue of the Stars<br>3rd FL. N TOWER<br>L.A. CA 90067 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>__X__Hand-delivery<br>_____Other |
| Agent for Service of Process:<br>c/o Sony Pictures Entertainment Inc.<br>Columbia Pictures Industries, Inc.<br>10202 W Washington Blvd.<br>Culver City, CA 90232 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| Agent for Service of Process:<br>c/o James Tauber<br>Sidney Kimmel Entertainment, LLC<br>9460 Wilshire Blvd. Ste 500<br>Beverly Hills, CA 90212 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| Agent for Service of Process:<br>c/o Sony Pictures Entertainment Inc.<br>Screen Gems, Inc.<br>10202 W Washington Blvd.<br>Culver City, CA 90232 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| Agent for Service of Process:<br>c/o Sony Pictures Entertainment Inc.<br>Screen Gems Distribution, Inc.<br>10202 W Washington Blvd.<br>Culver City, CA 90232 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |

25

I declare under the penalty of perjury under the laws of the State of California that the above is true and

26

correct.

27

Date: **06/25/10**                              Respectfully Submitted,

28



## CERTICATE OF MAILING

I hereby certify that on this __25__ day of June 2010, I caused to be mailed via first class U.S. mail, postage pre-paid, a true and correct copy of the foregoing this **Civil Complaint + Summons** to the following:

| | |
|---|---|
| Agent for Service of Process:<br>c/o Paracorp Incorporated<br>Parabolic Pictures, Inc.<br>2804 Gateway Oaks Dr. Ste 200<br>Sacramento, CA 95833 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| Agent for Service of Process:<br>c/o SHARE STALLINGS<br>Stable Way Entertainment, Inc.<br>6388 Deep Dell Place<br>L.A., CA 90068 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>__X__Hand-delivery<br>_____Other |
| Agent for Service of Process:<br>c/o Barbara Rosenbaum<br>Wonderful Films Corp.<br>1723 Cloverfield Blvd.<br>Santa Monica, CA 90404 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| Agent for Service of Process:<br>c/o James Tauber<br>SKE CREATIVE, LLC<br>9460 Wilshire Blvd. Ste 500<br>Beverly Hills, CA 90212 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| Sidney Kimmel<br>Sidney Kimmel Entertainment, LLC<br>9460 Wilshire Blvd. Ste 500<br>Beverly Hills, CA 90212 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| Amy Baer<br>CBS Films<br>11800 Wilshire Blvd.<br>L.A., CA 90025 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |

I declare under the penalty of perjury under the laws of the State of California that the above is true and correct.

Date: **06/ 25/10**          Respectfully Submitted,

**CERTICATE OF MAILING**

I hereby certify that on this ___25___ day of June  2010, I caused to be mailed via first class U.S. mail, postage pre-paid, a true and correct copy of the foregoing this **Civil Complaint + Summons**  to the following:

| | |
|---|---|
| c/o Sony Pictures Entertainment Inc.<br>BEHAVE PRODUCTIONS, INC<br>10202 W Washington Blvd.<br>Culver City, CA 90232 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| c/o Clerk<br>United States District Court<br>312 North Spring Street,<br>Los Angeles, CA 90012-2095<br>(213) 894-2434 | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>__X__Hand-delivery<br>_____Other |
| | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |
| | __X__U.S. Mail<br>_____Facsimile<br>_____Electronic Transmission<br>_____Hand-delivery<br>_____Other |

I declare under the penalty of perjury under the laws of the State of California that the above is true and correct.

Date: **06/25/10**                          Respectfully Submitted,



Exh. 3

# XXX
## WILLIAM MORRIS AGENCY, INC.
### TALENT AND LITERARY AGENCY

**GARY LODER**
VICE PRESIDENT

November 22, 1995

PAMELLA LAWRENCE
1882 South Redondo Blvd.
Ste 227
Los Angeles, CA  90019

Dear Pamela,

Thank you for giving us the opportunity to consider your material. Unfortunately we do not have 100% enthusiasm that you should have when being represented.

Good luck in you rfuture endeavors.

THE WILLIAM MORRIS AGENCY

Lara Rosenstock
Assistant to Gary M. Loder

Enc:

book
tape

Exh. 5

*PITCH AND TREATMENT SALES BY ALPHABETICAL ORDER*

## NAKED MAN, THE  *Comedy*

*Man loses his clothes and has to walk naked from Venice to Hollywood. Along the way, he gets noticed and quickly becomes a media celebrity.*

WRITER ................................................. Matthew Chapman
PURCHASE PRICE ..............................$1 mil / $1.8 mil
DATE OF SALE.................................... November 13, 1997
AGENTS................................... Deb Skelly, David Lubliner
AGENCY ...................................................... William Morris
BUYER ..................................................... Columbia Pictures
COLUMBIA EXEC. WHO FOUND PROJ. .....Matt Tolmach
PRODUCERS.............................. Betty Thomas, Jenno Topping

## NEW YEARS EVE  *Romantic comedy*

WRITERS ................................... Andrea Davis, Jeff Rothberg
DATE OF SALE................................................. August 7, 1997
BUYER ....................... Twentieth Century Fox / 1492 Pictures
PRODUCERS........................... Robert Kosberg, Jeff Rothberg
1492 EXEC. WHO FOUND PROJ..................... Jennifer Blum

## OF MICE AND MEN  *Drama*

*Not the Steinbeck novel but a "Breakfast Club" of the 90s as college kids who are stuck together as part of an experiment emotionally unload on each other.*

WRITER.................................................... Geoff Rodkey
PURCHASE PRICE............................... $250k / $600k
DATE OF SALE................................................. October, 1997
AGENTS ....................................... Ramses IsHak, Todd Harris
AGENCY ....................................................... William Morris
BUYER ...................................................................... Illusion

## PAIN KILLER  *Thriller*

*Set in the world of rock n roll.*

WRITER.................................................... Bryan Goluboff
PURCHASE PRICE...................... Mid-six figures / high-six
DATE OF SALE................................................. January, 1998
AGENCY ....................................................... William Morris
BUYER ...................................................... Warner Bros.

## PLANET DEB  *Comedy*

*A group of schoolgirls is driven  by their competitive natu to turn on one another as the debutante season approache*

WRITERS ......................... Michael Apostolina, Bob Sug
PURCHASE PRICE ....................... Low-six figures / mi
DATE OF SALE ................................... December,
AGENT.......................................................... Adam Shu
AGENCY.....................................................................
ATTORNEY............................................... David Co
LAW FIRM.................................................. Colden & Mc
BUYER................................................... New Line Cir
NEW LINE EXECS.
ON PROJ ................................ Lynn Harris, Donna La

## POSTAL POLICE  *Comedy*

*Two men obsessed with 1970's cop shows go to work for Los Angeles postal police because for seven straight yea they have failed the L.A. Police Department's entrance exam.*

WRITERS ........................... Jeffrey Berman, Frank Am
PURCHASE PRICE ........................ Low-six figures / n
DATE OF SALE .................................................. July 10
AGENT.............................................................. Eri
AGENCY............................................... Irv Schec
ATTORNEY........................................... Nanett
LAW FIRM ....... Kleinberg, Lopez, Lange, Brisbin and
BUYER............... Walt Disney Pictures/ Wind Dance
WIND DANCER EXEC.
WHO FOUND PROJ....................................... Melissa G
PRODUCER..................................................... Stephanie

## PUMPKINHEAD  *Comedy*

*A group of crooks runs a con based on a nonexistent show.  When the police discover their scheme. they g ahead with the show, with surprising results.*

WRITERS ............................... Tim Kirk, Dave C
PURCHASE PRICE ........................ Low-six figures
DATE OF SALE ................................................. July
AGENT................................ Rob Carlson, Ala
AGENCY.......................................................... Willia
BUYER............................................................
UA EXEC. ON PROJECT.............................. Jeff
PRODUCER....................................................... Frank

Exh. 6

*Nicholas A. Weimer*
*Attorney at Law*
*2040 Avenue of the Stars*
*Fourth Floor*
*Los Angeles, California 90067*
*Telephone (310) 553-3091*
*Fax (310) 553-5223*

January 5, 2000

Mr. Matt Tolmach
Columbia Tri Star
10202 W. Washington Blvd.
Culver City, Ca. 90232-3195

Re: Pamela Lawrence-"Caught on video, the most embarrassing
                       moment"

Dear Mr. Tolmach:

    Please be advised that this office represents Ms. Pamela Lawrence in a claim against you for violation of her copyright regarding a woman walking naked down the street and being videotaped and subsequently becoming a celebrity. It is her contention that your "pitch and treatment "The naked man" is based upon her work and in fact resulted from your access to her work at William Morris Agency.

    Please contact this office within 10 days of this letter to discuss possible resolution of this matter. If we do not hear from you, we will go ahead and file a lawsuit.

    Thank you for your anticipated courtesy and cooperation.

                                Sincerely yours,

                                Nicholas Weimer

                                                    Exh. 7

NAW/ns

## THE NAKED MAN

ACT ONE

Establish a man crushed by modern corporate life. Constantly anxious about time, his appearance, his money, his status. His marriage is on the rocks. His wife is doing better than him because she has somehow retained her courage. She loves him but has lost patience with his caution and rigidity. He has become obsessively neat and clean and correct. Tomorrow is her birthday. His boss, who treats him like shit, is sending him to SF this evening to have lunch the following day with a man who no one else will deal with. He cannot refuse but promises to get back in time for the party at 7pm the following day. He goes to work. A company where everyone is lethally polite. He is being sent to SF for a lunch meeting with a man who no one else will deal with, very rich, very powerful, eccentric, intolerable. It's a suicide mission, a way of dumping him and he knows it. He goes to LAX and his plane gets canceled. Drinking to quell his nerves, he meets a woman who has also been canceled. The next plane isn't for 4 hours and she has forgotten something at home. She lives in an apartment building in Venice. They go back to her place and she seduces him. The next morning he wakes up with a terrible hangover. She tells him there's a plane in 2 hours, go get the paper while she takes a shower. He does. And gets locked out. He knocks, she doesn't hear. An older woman comes out of a nearby door, sees him naked, and starts to scream. Someone else comes out, thinks he's a rapist and fetches a gun. He is forced to flee naked into the city.

ACT TWO

Every time he attempts to get clothes, his situation is made worse. A jogger goes by with a sweater around her waist. He tries to grab it, she screams rape. He tries to go into a store to negotiate clothes - and causes a near riot. Cops and the Media get involved. Both the Mayor and the Chief of Police are up for re-election and this becomes a rallying point for the enforcement of public morals. He tries to call his wife but she's out of her office. He calls a friend but the cops arrive before he can complete the call and he is forced to run again. Slowly the situation builds. All the news stations get involved. Psychologists, religious leaders, politicians give their comments on air. A News Helicopter gets a good shot of him and his wife and coworkers realize who it is. Using an ingenuity he didn't know he had, he manages to avoid getting caught. His identity becomes known. Media descends on his company. Some


Exh. 8
Exh. D

5

are appalled, others are impressed. At some point, he sees the furor on television. His boss sneers at him: this is not a man who can last long out there. The Mayor insults him. The Chief Of Police is enraged. And their opponents deride both men. If they can't even catch a naked man, what chance do they have of controlling crime? He is trapped by a reporter. He explains he never did anything wrong in his whole life. It's all a gigantic mistake. The reporter offers him clothes. He refuses. Everyone says he can't make it home. Well, he can and he will. He's fed up with his life anyway, corporations, organizations, political correctness, shirts, ties, suits, tight shoes. The last ten years he's been making himself sick trying to hold onto all this. Now he's lost it all, his job, his clothes, and probably his wife, and it feels great. He hasn't felt this free in years. They want to hunt him like an animal, he'll be the best hunted animal there ever was.

ACT THREE

Now it's a matter of honor to get home. The city grinds to a halt as everyone watches developments on TV. An evangelist offers a hundred thousand to anyone who can catch him. But the man who he was supposed to go visit, who has always treated people from the firm with contempt because they're so boring, offers a counter-reward to him of a hundred thousand if he can make it. A naked man against the whole city? And still he's not been caught. Now that's a man he can admire. Wagers are made. Political careers hang in the balance. Finally, he is running up the road to his house and the dragnet is tightening around him. He only has a half mile to go but it doesn't look like he'll make it. And then, out of all the houses other men and even some women, rush out naked and surround him. The cops, unable to identify one naked man from another are confounded and our hero breaks from the pack at the last minute and makes it to his door. The door opens and his wife opens it. She looks at him and smiles and say, "Welcome home, honey." He embraces her.

Titles Over: Fame, book deals, computer games, the reward.

Exh. D

6



# TriStar Pictures

a SONY PICTURES ENTERTAINMENT company

**AMY BAER**

*Executive*
*Vice President*

March 24, 1998

Pamella Lawrence
1882 South Redondo Blvd.
Los Angeles, CA 90019

## RE: CAUGHT ON VIDEO...THE MOST EMBARRASSING MOMENT

Dear Pamella,

Thank you for coming in to discuss your book "Caught On Video...The Most Embarrassing Moment". It is commendable of you to have shared your experiences to show others how the judicial system will protect one's rights. While I found your experience interesting, unfortunately it is not something that TriStar wishes to pursue at this time.

Thank you again for thinking of TriStar. I wish you the best of luck in your endeavors.

Sincerely,

Amy Baer
AB/jt

cc:    Elizabeth Franco Bradley

Exh. 8

10202
West
Washington
Boulevard
Culver City,
California
90232-3195
Tel:
**310 280 7962**
Fax:
**310 280 2288**

070446

BANK OF AMERICA
CUSTOMER SERVICE AMERICAS #1235

16-66
1220

510985

CHECK NUMBER : 510985

NINE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS *********************************************************************************

06/04/01          ******9500.00

PAMELLA LAWRENCE AND
JOSHUA W GLOTZER AND
DAVID C. LEIB

⑈510985⑈ ⑆122000661⑆ 1235⑈06004⑈

04591 PAMELLA LAWRENCE AND
060101 FULL SETTLEMENT 06/01/01
FULL SETTLEMENT

9500.00          0.00          9500.00

9500.00          0.00          9500.00

Exh. C W14

Exh. CW14

**JOSHUA W. GLOTZER, ATTORNEY AT LAW**
CLIENT TRUST ACCOUNT
PH. 310-274-3155
301 N. CANON DR. STE. 223
BEVERLY HILLS, CA 90210

1072

90-1261/1222

DATE 3/27/01

PAY TO THE ORDER OF _Pamella Lawrenco-Nicholson_   $ 3000

_Three thousand dollars_   DOLLARS

**Santa Monica Bank**
9585 WILSHIRE BOULEVARD
Beverly Hills, California 90212

FOR _Settlt - Columbia_

⑈001072⑈ ⑆122212611⑆ 17 076 809⑈

Exh. SC2

DO NOT CASH THIS CHECK UNLESS YOU CAN SEE A REFLECTIVE WATERMARK. "DOCUMENT SECURITY" APPEARING ON THE BACK OF THE CHECK WHEN VIEWED AT AN ANGLE.

SONY PICTURES ENT. INC.
10202 WEST WASHINGTON BOULEVARD
CULVER CITY, CA 90232

CIB 2000-343298

62-20/311

Check Date:   03/22/2001

**PAY**
**EXACTLY**        **********5,000.00

PLEASE CASH WITHIN 180 DAYS

Pay To The Order Of

**************5,000DOLLARS AND 00 CENTS

JOSHUE W. GLOTZER & PAMELLA LAWRENCE
C/O LAW OFFICES OF JOSHUA W GLOTZER
301 NORTH CANON DRIVE, SUITE 223
BEVERLY HILLS, CA 90210

*Joseph W Kraft*

THIS MULTI-TONE AREA OF THE DOCUMENT CHANGES COLOR GRADUALLY AND EVENLY FROM DARK TO LIGHT

⑊"2000343298⑊"  ⑊:031100209⑊:  39ꞏ1080 78⑊"

Exh. SC

E x h. SC

**SETTLEMENT BREAKDOWN & AUTHORIZATION TO ENDORSE SETTLEMENT CHECK**

CASE: Lawrence  vs. Columbia Pictures, Gareth Wigam & Amy Baer

GROSS SETTLEMENT :                                         $ 5,000.00


**GROSS SETTLEMENT TOTAL:** $ 5,000.00

LESS:

ATTORNEY FEES: $ 2,000.00


**NET TO CLIENT:S 3,000.00**

The foregoing has been read, understood and is agreeable to me.  I hereby direct my attorney to satisfy the above liens pursuant to the amounts stated herein.  I hereby authorize and give power of attorney to my attorney, Joshua W. Glotzer, to endorse my signature on the settlement check in this matter and deposit said check in his client trust bank account and disperse payment as set forth above

_____        3 - 13 - 01.
Pamella Lawrence                              Date


Exh. SBD1



**SONY PICTURES STUDIOS**

VISITOR PASS
SPEED LIMIT 12 MPH
PLEASE SURRENDER PASS TO GATE GUARD
AT ORIGINAL ENTRY UPON DEPARTURE

LAST NAME : LAWRENCE        FIRST: PAMELA

DESTINATION:

DATE      :            TIME: 15:00   GATE: WEST

CONTACT   :                          EXTN: 47962

WALK: X        DRIVE:

COMMENTS: STRUCTURE, CLO

**SONY
PICTURES**

*Exh. 9*

C I V I L   R E G I S T E R   R E P O R T

*L.A. Superior Court Central*
*Civil Division*

| | |
|---|---|
| Case Number: BC229032 | PAMELLA LAWRENCE VS WILLIAM MORRIS AGENCY |

Filing Type: New Filing
Case Type  : Breach Contrct/Warnty(Sellr Pltf)      Filed    : 04/28/00
Judge      : Madeleine I. Flier                      Age      : 346
Disp Type  :                                         Disposed : 00/00/00
Disp Manr  :

Lawrence, Pamella

William Morris Agency
Kaplan, Aaron
Loder, Gary
Lubliner, David
Wolken, Robert A.
et al.

                    Plaintiff(s)                                  Defendant(s)

                                          V S

Attorneys of Record:                      Attorneys of Record:

Leib, Daniel C.                           Rintala, Smoot, Jaenicke & Rees, La
301 N. Canon Drive                        10351 Santa Monica Blvd.
#223                                       Suite 400
Beverly Hills        CA 90210             Los Angeles        CA 90025-6937
310 385 7333                              310 203 0935


C A S E   H I S T O R Y

| Date | Activity |
|---|---|

**04/28/00**  *Case Filed / Opened*
Judge: Madeleine I. Flier -- Breach Contrct/Warnty(Sellr Pltf)

**04/28/00**  *Document*
Complaint

**04/28/00**  *Document*
Summons Filed
   Filed by: Attorney for Plaintiff/Petitioner
'iled By        Lawrence, Pamela, Esq.              Attorney for Pltf/Petnr
n Behalf of  Lawrence, Pamella                      Plaintiff/Petitioner

**04/28/00**  *Fees Paid*
 Waived - Forma Pauperis              192.00

**04/28/00**  *Serv Summ/Compl Fld*   William Morris Agency
    1          Served On 04/28/00
CCP 416.10 (Corporation)
person served Jeffrey Robin                         Exh. 10

\GE:    1                                     04/09/01  14:58:34

## C I V I L   R E G I S T E R   R E P O R T

*L.A. Superior Court Central*
*Civil Division*

| Case Number: BC229032 | PAMELLA LAWRENCE VS WILLIAM MORRIS AGENCY |
|---|---|

## C A S E   H I S T O R Y

| Date | Activity |
|---|---|

**05/02/00** *Document*
  First Amended Complaint
    Filed by: Attorney for Pltf/Petnr
Filed By     Lawrence, Pamela, Esq.          Attorney for Pltf/Petnr

**05/23/00** *Document*
  Summons Filed on 1st amended compl
    Filed by: Attorney for Plaintiff/Petitioner
Filed By     Lawrence, Pamela, Esq.       Attorney for Pltf/Petnr
On Behalf of  Lawrence, Pamella         Plaintiff/Petitioner

**05/23/00** *Document*
  Declaration of Diligence Robert A. Wolken
    Filed by: Attorney for Plaintiff/Petitioner

**05/23/00** *Document*
  Declaration of Diligence Aaron Kaplan
    Filed by: Attorney for Plaintiff/Petitioner

**05/23/00** *Document*
  Declaration of Diligence Gary Loder
    Filed by: Attorney for Plaintiff/Petitioner

**05/23/00** *Document*
  Declaration of Diligence David Lubliner
    Filed by: Attorney for Plaintiff/Petitioner

**05/23/00** *Serv Summ/Compl Fld*  William Morris Agency
  6         Served On 05/08/00
CCP 416.10 (Corporation)
by leaving copies with or in the presence of David Kekst

**05/23/00** *Serv Summ/Compl Fld*  Kaplan, Aaron
  3         Served On 05/08/00
CCP 416.90 (Individual)
by leaving copies with or in the presence of David Kekst

*Exh. 11*

**05/23/00** *Serv Summ/Compl Fld*  Loder, Gary
  4         Served On 05/08/00
CCP 416.90 (Individual)
by leaving copies with or in the presence of David Kekst

## C I V I L    R E G I S T E R    R E P O R T

*L.A. Superior Court Central*
*Civil Division*

| Case Number: BC229032 | PAMELLA LAWRENCE VS WILLIAM MORRIS AGENCY |
|---|---|

## C A S E    H I S T O R Y

| Date | Activity |
|---|---|

05/23/00  *Serv Summ/Compl Fld*   Lubliner, David
    5              Served On 05/08/00
CCP 416.90 (Individual)
by leaving the copies with or in the presence of David Kekst

05/23/00  *Serv Summ/Compl Fld*   Wolken, Robert A.
    2              Served On 05/10/00
CCP 416.90 (Individual)
by leaving copies with or in the presence of David Kekst

05/24/00  *Document*
   Answer
    Filed by: Attorney for Defendant/Respondent
On Behalf of   William Morris Agency          Defendant/Respondent
On Behalf of   Kaplan, Aaron                  Defendant/Respondent
On Behalf of   Loder, Gary                    Defendant/Respondent
On Behalf of   Lubliner, David                Defendant/Respondent
On Behalf of   Wolken, Robert A.              Defendant/Respondent
Filed By       Rintala, Smoot, Jaenicke & Rees, Law O/ Attorney for Defendant/Re

05/24/00  *Fees Paid*
   Received - Fee, Adverse party        945.00
Paid By        William Morris Agency          Defendant/Respondent
Paid By        Kaplan, Aaron                  Defendant/Respondent
Paid By        Loder, Gary                    Defendant/Respondent
Paid By        Lubliner, David                Defendant/Respondent
Paid By        Wolken, Robert A.              Defendant/Respondent

05/25/00  *Document*
  Ntc of Removal to Federal Court
   Filed by: Attorney for Deft/Respnt
On Behalf of   William Morris Agency          Defendant/Respondent
On Behalf of   Kaplan, Aaron                  Defendant/Respondent
On Behalf of   Loder, Gary                    Defendant/Respondent
On Behalf of   Lubliner, David                Defendant/Respondent
On Behalf of   Wolken, Robert A.              Defendant/Respondent
Filed By       Rintala, Smoot, Jaenicke & Rees, Law O/ Attorney for Defendant/Re

06/12/00  *Document*
  Substitution of Attorney
   Filed by: Attorney for Plaintiff/Petitioner

Exh. 12

# C I V I L   R E G I S T E R   R E P O R T

*L.A. Superior Court Central*
*Civil Division*

---

Case Number: BC229032          PAMELLA LAWRENCE VS WILLIAM MORRIS AGENCY

---

## C A S E   H I S T O R Y

| Date | Activity |
|------|----------|

On Behalf of  Lawrence, Pamella                     Plaintiff/Petitioner

**07/13/00**  *Document*
 Order remanding the action to The
 Superior Court of the State of California for the County of
 Los Angeles
  Filed by: Clerk

**09/07/00**  *Document*
 Notice of Status Conference filed

**09/07/00**  *Calendaring DOC/EVT*
 Initial Status Conference 10/13/00  8:30 am Dept. 58

**10/06/00**  *Document*
 Status Conference Questionnaire
  Filed by: Attorney for Deft/Respnt
On Behalf of  William Morris Agency             Defendant/Respondent
On Behalf of  Kaplan, Aaron                    Defendant/Respondent
On Behalf of  Loder, Gary                      Defendant/Respondent
On Behalf of  Lubliner, David                  Defendant/Respondent
On Behalf of  Wolken, Robert A.                Defendant/Respondent
Filed By      Rintala, Smoot, Jaenicke & Rees, Law O/ Attorney for Defendant/Re

**10/11/00**  *Document*
 Status Conference Questionnaire
  Filed by: Attorney for Pltf/Petnr
On Behalf of  Lawrence, Pamella                Plaintiff/Petitioner
Filed By      Leib, Daniel C.                  Attorney for Plaintiff/Pe

**10/13/00**  *Proceeding/Event*
 Initial Status Conference
 Completed 10/13/00
 Dept. 58, Judge Lawrence W. Crispo                    *Exh. 13*

**10/25/00**  *Document*
 Amendment to Complaint Doe 1 to be Columbia Pictures
 Industries, Inc.
  Filed by: Attorney for Plaintiff/Petitioner
On Behalf of  Lawrence, Pamella                Plaintiff/Petitioner
Filed By      Leib, Daniel C.                  Attorney for Plaintiff/Pe

## C I V I L   R E G I S T E R   R E P O R T

*L.A. Superior Court Central*
*Civil Division*

---

Case Number: BC229032          PAMELLA LAWRENCE VS WILLIAM MORRIS AGENCY

---

### C A S E   H I S T O R Y

| Date | Activity |
|------|----------|

**10/25/00**  *Document*
  Amendment to Complaint Doe 2 to be Amy Baer
    Filed by: Attorney for Plaintiff/Petitioner
On Behalf of  Lawrence, Pamella                    Plaintiff/Petitioner
Filed By       Leib, Daniel C.                     Attorney for Plaintiff/Pe

**10/25/00**  *Document*
  Amendment to Complaint Doe 3 to be Gareth Wigam
    Filed by: Attorney for Plaintiff/Petitioner
On Behalf of  Lawrence, Pamella                    Plaintiff/Petitioner
Filed By       Leib, Daniel C.                     Attorney for Plaintiff/Pe

**10/25/00**  *Document*
  Amendment to Complaint Doe 4 to be Matthew Chapman
    Filed by: Attorney for Plaintiff/Petitioner
On Behalf of  Lawrence, Pamella                    Plaintiff/Petitioner
Filed By       Leib, Daniel C.                     Attorney for Plaintiff/Pe

**12/15/00**  *Document*
  Declaration pursuant to 170.6
  **vacated - fees not paid**
  **fees paid on 01/03/01 and
  counsel filed a new 170.6**   Filed by: Attorney for Deft/Respnt
      Vacated 01/04/01
On Behalf of  Columbia Pictures Industries, Inc.   Defendant/Respondent
On Behalf of  Baer, Amy                            Defendant/Respondent
On Behalf of  Wigam, Gareth                        Defendant/Respondent

**12/29/00**  *Document*
  Defendant's Demurrer
    Filed by: Attorney for Deft/Respnt                    Exh. 14

**12/29/00**  *Fees Paid*
  Motion Setting Fee          23.00
On Behalf of  Columbia Pictures Industries, Inc.   Defendant/Respondent
On Behalf of  Baer, Amy                            Defendant/Respondent
On Behalf of  Wigam, Gareth                        Defendant/Respondent
Paid By        Gaims, Weil, West & Epstein, LLP    Attorney for Deft/Respnt

**12/29/00**  *Fees Paid*
  Received - Fee, Adverse party          767.00

# C I V I L   R E G I S T E R   R E P O R T

*L.A. Superior Court Central
Civil Division*

| Case Number: BC229032 | PAMELLA LAWRENCE VS WILLIAM MORRIS AGENCY |
|---|---|

## C A S E   H I S T O R Y

| Date | Activity |
|---|---|

On Behalf of  Columbia Pictures Industries, Inc.              Defendant/Respondent
On Behalf of  Baer, Amy                                       Defendant/Respondent
On Behalf of  Wigam, Gareth                                   Defendant/Respondent
Paid By       Gaims, Weil, West & Epstein, LLP                Attorney for Deft/Respnt

**01/03/01**  *Document*
  Affidavit of Prejudice--Peremptory as to Judge Crispo - Dept. 58
   Filed by: Attorney for Deft/Respnt

**01/03/01**  *Document*
  Declaration DECLARATION UNDER CODE OF CIVIL
  PROCEDURE SECTION 170.6
   Filed by: Attorney for Deft/Respnt
On Behalf of  Columbia Pictures Industries, Inc.              Defendant/Respondent
On Behalf of  Baer, Amy                                       Defendant/Respondent
On Behalf of  Wigam, Gareth                                   Defendant/Respondent
Filed By      Gaims, Weil, West & Epstein, LLP                Attorney for Deft/Respnt

 **01/04/01**  *Calendaring DOC/EVT*
  Affidavit of Prejudice 01/05/01  8:32 am Dept. 58

 **01/11/01**  *Document*
  Notice
  notice of acceptance  by court
   Filed by: Attorney for Defendant/Respondent
On Behalf of  Columbia Pictures Industries, Inc.              Defendant/Respondent
On Behalf of  Baer, Amy                                       Defendant/Respondent
On Behalf of  Wigam, Gareth                                   Defendant/Respondent
Filed By      Gaims, Weil, West & Epstein, LLP                Attorney for Deft/Respnt

 **02/02/01**  *Proceeding/Event*
  Order Re: Reassignment of Case
  Completed 02/02/01
  Dept. 1, Judge Gary Klausner

 **02/06/01**  *Calendaring DOC/EVT*
  Status Conference 03/06/01  9:00 am Dept. 37

 **02/06/01**  *Document*
  Notice of Status Conference filed

 **02/09/01**  *Proceeding/Event*
  Hearing on Demurrer

*Exh. 15*

# C I V I L   R E G I S T E R   R E P O R T

*L.A. Superior Court Central*
*Civil Division*

| Case Number: BC229032 | PAMELLA LAWRENCE VS WILLIAM MORRIS AGENCY |
|---|---|

# C A S E   H I S T O R Y

| Date | Activity |
|---|---|

Dept. 58, Judge Lawrence W. Crispo

**02/15/01** *Document*
Notice of date and time of hearing on
demurrer
  Filed by: Attorney for Deft/Respnt

**03/06/01** *Calendaring DOC/EVT*
 Post-Mediation Status Conference 06/07/01  9:00 am Dept. 37
 6/7/01

**03/06/01** *Calendaring DOC/EVT*
 Final Status Conference 08/09/01  9:00 am Dept. 37

**03/06/01** *Calendaring DOC/EVT*
 Jury Trial 08/15/01  9:00 am Dept. 37
 Time Estimate is 5 days

**03/06/01** *Sp Status Start*
 Sent to Med - $750,000-1 million      Commercial Provider Program
 Hearing Date 5/30/01   9:30 a.m.  Hon. Michael Berg

**03/26/01** *Document*
 Partial Dismissal(not entire case) With prejudice, Entire action
 as to Defendants Columbia Pictures,Inc., Amy Baer and
 Gareth Wigam only.
  Filed by: Attorney for Pltf/Petnr
)n Behalf of  Lawrence, Pamella                      Plaintiff/Petitioner

 **04/03/01** *Calendaring DOC/EVT*
 Hearing-Mediation-Comm Provider 05/30/01  9:30 am ADR Office
 Commercial Provider
 Hon. Michael Berg

 **04/03/01** *Document*
 Ntc of Assignment of Mediator
  Filed by: ADR Clerk                      *Ex 4.16*

 **06/07/01** *Proceeding/Event*
 Post-Mediation Status Conference
 Dept. 37, Judge Madeleine I. Flier

 **06/07/01** *Sp Status End*

AGE:    7                                    04/09/01  14:58:34

## C I V I L   R E G I S T E R   R E P O R T

*L.A. Superior Court Central*
*Civil Division*

---

Case Number: BC229032        PAMELLA LAWRENCE VS WILLIAM MORRIS AGENCY

---

## C A S E   H I S T O R Y

| Date | Activity |
|------|----------|

Sent to Med - $750,000-1 million

**08/09/01** *Proceeding/Event*
 Final Status Conference
 Dept. 37, Judge Madeleine I. Flier

**08/15/01** *Proceeding/Event*
 Jury Trial Time Estimate is 5 days
 Dept. 37, Judge Madeleine I. Flier

Exh. 17

June 10, 2010

Michael Lynton, Chairman & CEO
Amy Pascal, Co-Chairman
Sony Pictures Entertainment                    **VIA U.S. MAIL/PROCESS SERVER**
10202 W. Washington Blvd.
Culver City, CA 90232

PARTIES:

| | | |
|---|---|---|
| Sidney Kimmel Entertainment | Mr. Jim Tauber | Ms. Amy Baer |
| Mr. Sidney Kimmel | Mr. Bruce Toller | Mr. Gareth Wigam |
| Mr. William Horberg | Mr. Diana Phillips | Wonderful Films |
| Mr. Lawrence Malkin | Mr. Dean Craig | |
| Mr. Share Stallings | Mr. Frank Oz | |
| Mr. Chris Rock | Mr. Neal LaBute | |
| Chris Rock Enterprises Inc. | Columbia Pictures Industries, Inc. | |
| Ms. Ayesha Carr | Screen Gems, Inc. | |
| Parabolic Pictures Inc. | Stable Way Entertainment | |

**REF:**  *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994."*
*"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1"*

Fraudulent Copyrights: [V3538 D318 P1-3], [PA0001671381]

**Super. Crt. Case of Los Angeles:    BC229032**

To whom it may concern:

You are hereby ordered to **"CEASE and DESIST"** from committing "new" and "willful acts" of Copyright Infringements" for *Caught On Video... The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1."* I did not sign a "settlement agreement" "transferring," or "assigning" to Sony and the William Morris Agency "ownership" of my book entitled *"Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994* for the storyline of a *"Naked Women"* and/or *"Naked Man"*. In addition, I did not execute a "settlement agreement" giving you authorization and permission to make derivative film projects from my copyrighted work product or to plagiarize elements from my CD. The July 11, 1994 date was for the funeral of a Jamaican reggae music promoter/business who was a father and husband in which I was attacked and videotaped in relationship to the movie *"Death At A funeral 2007,"* of which, was consequently released on July 11, 2007. By your activities, you have infringed upon my "inalienable rights" of ownership in violation of the Copyright Act, 17 U.S.C 101, which clearly states that the copyright owner has the right to produce, display or make derivatives of a copyrighted audiovisual work.

*Exh. 18*

It is my belief that you have stolen my copyrighted work from my CD and there is striking similarity in some of the actual events, likeness, images, lifted themes, scenes and dialogue that is reflected in the movie *"Death At A Funeral 2010"*. It is my belief, based on the striking similarity of the movie *"Death At A Funeral 2010"* in relation to *"Naked Man"* that your actions were premeditated, willful, and constitutes "unfair competition," "breach of implied contract," "fraud and deceit," "intentional interference with prospective economic advantage," "negligent interference with prospective economic advantage" and discrimination based on gender.

All the parties that are directly or indirectly affiliated with my work were able to "movie contract" with Sony, and moved on to have promising careers; however, I was denied the same movie contractual treatment as a women, credit and royalties that was granted to the above parties in the same circumstance involving the same copyright registration.

As a proximate result of the "breach of contract," and stealing copyrighted work from my CD, the "settlement agreements" are hereby "null" and "void". You do not own legitimate copyrights entitling you to use any of my motion picture rights, as well as, all future merchandising and licensing rights, nor have I granted you any television motion picture rights, allied and subsidiary rights for my Work and usage of (likeness of characters, image, names, persons, materials and/or institutions in any and all formats) for which I am the **"Only Legal Owner to the Copyrights"**.

As the **"Only Owner,"** you are hereby **"Ordered'** to **"CEASE and DESIST"** from writing and creating sequel literary material using the characters of my Work, and you are prohibited from producing any future work exploiting my copyrighted work. Furthermore, I have not granted you the right to create and commission "studio sequels" in the form of screenplays, teleplays, treatments and the like which may serve as the basis of either feature motion pictures, television programs, or other productions. Your "criminal enterprise" is encroaching upon my "lawful rights of authorship" existing under the Library of Congress, the Berne Convention and otherwise, including the making of any form of changes, deletions and modifications of my Work.

Be forewarned that any and all unauthorized usage of my copyrights, surmounts to "THEFT," and "Willful" Copyright Infringement, including but not limited to copying and distribution of the aforementioned material, without my expressed written permission in violation of Title 17 U.S. Code, Section 106(a) of the Copyright Act of 1976, and several recognized international copyright laws that will be prosecuted to the fullest extent of the law for THEFT.

This **"CEASE and DESIST ORDER"** serves as confirmation to the above named Defendants and the U.S. Copyright Office, affirming that your fraudulent copyrights are terminated, nullified, voided and/or rendered inoperative, including any and all other "fraudulent copyrights" [V3538 D318 P1-3], [PA0001671381], [V3545D307], filed by the above parties and any other persons, people, companies, or etc. that you have been made a party to this THEFT.

Upon receipt of this **"CEASE and DESIST"** letter, I am demanding that you immediately correct the copyright registrations filed with the Registrar of Copyrights by adding my name to line six for both copyright registrations *"Death At A funeral 2007,"* and *"Death A Funeral 2010."* I am requesting that you immediately allot me "credit" in the main titles and on any and all subsequent releases for both

*Exh. 19*

movies. Within ten (10) days, I am requesting that you pay me damages for the theft of my intellectual property from my CD, and royalties.

I am requesting within ten (10) days complete disclosure of the aforementioned assurances in a written format that you will cease and desist from any further bad faith promotion, advertising, distribution and sales in association with my book and supplemental CD for the Jamaican funeral story dated July 11, 1994.

Your failure to respond in thirty days (30) via email to this letter in a timely fashion, and/or your failure to cooperate with the demands in this letter will result in a "Default," force me to file a second law suit, place permanent injunction against you, place liens on all your property, including the copyrights and your homes (and those individuals and production companies directly involved with the infringing activity) in the Federal court seeking monetary damages which may be available to me.

Sincerely,

**PAMELLA LAWRENCE**
Writer and Legal Owner
*Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994*
*Caught On Video...The Most Embarrassing Moment de Funeral, July 11, 1994, Jamaican Volume 1*
2511 W. 3rd.,
Ste # 200
Los Angeles, CA 90057-1915
323 937 1498 (F)
defuneral1995@hotmail.com
losangelesstory@hotmail.com

cc:   Eric Holder, Assistant Attorney General, 202-307-6777(F)
      Valerie Caproni, General Counsel, Federal Bureau of Investigations (F) 202-324-5366
      Sen. John Whitmire, Chairman of the Senate's Criminal Justice Comm., 512-475-2015
      Tanya Sandros, General Counsel, **U.S. Copyright Office**, 202-707-8380 (O), 202-707-8366(F)

Exh. 20

**U.S. POSTAL SERVICE     CERTIFICATE OF MAILING**

MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE–POSTMASTER

Received From: Pamela Lawrence
2511 W. 3rd Street
#200 L.A. Calif. 90005

One piece of ordinary mail addressed to: Mr. Chris Rock
Stephen D. Barnes
2000 Ave of the Stars.
3rd Floor N. Tower
L.A. Calif. 90067.

PS Form **3817**, January 2001

U.S. POSTAGE
PAID
LOS ANGELES.CA
90036
JUN 11 10
AMOUNT
**$1.15**
0001 5647-05

---

**U.S. POSTAL SERVICE     CERTIFICATE OF MAILING**

MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE–POSTMASTER

Received From: Pamela Lawrence
2511 W. 3rd Stra
#200 LA. CA. 90058

One piece of ordinary mail addressed to:
c/o Sony Pictures
Ent.
Screen Gems.
10202 W. Washy A

PS Form **3817**, January 2001

U.S. POSTAGE
PAID
LOS ANGELES.CA
90036
JUN 11 10
AMOUNT
**$1.15**
0001 5647-05

---

**U.S. POSTAL SERVICE     CERTIFICATE OF MAILING**

MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE–POSTMASTER

Received From: Pamela Lawrence
2511 W 3rd #200
L.A. CA 90057

One piece of ordinary mail addressed to:
Michael Lynton
Amy Pascal
Sony Pictures
10202 W. Washway

PS Form **3817**, January 2001

U.S. POSTAGE
PAID
LOS ANGELES.CA
90036
JUN 11 10
AMOUNT
**$1.15**
0001 5647-05

Exh. 21

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **(a) PLAINTIFFS** (Check box if you are representing yourself ☐) _PAMELLA LAWRENCE 3183 WILSHIRE BLVD STE 196-C43. LA. CA 90010_ | **DEFENDANTS** _SONY PICTURES ENT. Inc._ |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

Name & Address:
PAMELLA LAWRENCE
3183 Wilshire Blvd, Ste196-C43
Los Angeles, CA 90010

FOR OFFICE USE ONLY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PAMELLA LAWRENCE

                                    PLAINTIFF(S)

SONY PICTURES ENTERTAINMENT,
INC,,

SEE ATTACHED

                                    DEFENDANT(S).

CASE NUMBER

CV10-04737 SVW (Ex)

**SUMMONS**

TO:   DEFENDANT(S): _____ SEE ATTACHED _____

FOR OFFICE USE ONLY

A lawsuit has been filed against you.

    Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Pamella Lawrence_____, whose address is ___3183 Wilshire Blvd., Ste#196-C43_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ 7/1/10

By: _____
            Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

FOR OFFICE USE ONLY

CV-01A (12/07)                                   **SUMMONS**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV10- 4737 SVW (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)           NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY